Corley G. NEWMAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17896.

United States Court of Appeals
Fifth Circuit.

April 12, 1960.

Zach H. Douglas, Jacksonville, Fla., B. L. Solomon, Marianna, Fla., for appellant.

Edward L. Stahley, Asst. U. S. Atty., Tallahassee, Fla., Wilfred C. Varn, U. S. Atty., F. E. Steinmeyer, III, George B. Barrs, Asst. U. S. Attys., Tallahassee, Fla., for appellee.

Before RIVES, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

RIVES, Chief Judge.

The information charged that the defendant "did dispose of a substance of the Character used in the manufacture of distilled spirits, to wit, sugar, and wilfully and unlawfully failed to render a correct return to the Assistant Regional Commissioner, Alcohol and Tobacco Tax, Internal Revenue Service, Atlanta, Georgia, of the disposition of the said substance as theretofore, to wit, on 27 January 1954, required in writing by the Assistant Regional Commissioner, Alcohol and Tobacco Tax, Internal Revenue Service, and in the form and manner required by section 5213(a) of Title 26 of the United States Code and the regulations prescribed thereunder by the Secretary of the Treasury or his delegate." Count 1 charged that the offense was committed "from on or about 1 January 1957 to 21 August 1957," and Count 2 fixed the time as "from on or about 1 January 1958 to 30 July 1958." The jury found the defendant guilty as charged in each count. The court sentenced him to imprisonment for six months on Count 1, and fined him $200.- 00 on Count 2, but suspended the prison sentence and placed the defendant on probation for a period of three years.

The Government's case was based principally upon the testimony of Mr. Warren H. McConnell, a Criminal Investigator with the Alcohol and Tobacco Tax Division of the Bureau of Internal Revenue. The defendant [1] insists that the testimony of agent McConnell should have been excluded because it related to evidence procured by means of an illegal search of defendant's records in violation of the Fourth Amendment to the Constitution of the United States, or because the requirement that the defendant keep and disclose the records violated his

---

1. We shall refer to the appellant as the defendant.

privilege against self-incrimination under the Fifth Amendment.

Section 5213(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 5213, provides that:

"Every person disposing of any substance of the character used in the manufacture of distilled spirits shall, when required by the Secretary or his delegate, render a correct return, in such form and manner as the Secretary or his delegate may by regulations prescribe, showing the names and addresses of the persons to whom such disposition was made, with such details, as to the quantity so disposed of or other information which the Secretary or his delegate may require as to each such disposition, as will enable the Secretary or his delegate to determine whether all taxes due with respect to any distilled spirits manufactured from such substances have been paid."

Section 5609 of said Internal Revenue Code, 26 U.S.C.A. § 5609, prescribes the penalty as follows:

"Any person who willfully violates any provision of section 5213 (a), or of any rules or regulations issued thereunder, and any officer, director, or agent of any such person who knowingly participates in such violation, shall upon conviction be fined not more than $500 or be imprisoned for not more than 1 year, or both."

The defendant had acknowledged receipt of the formal demand letter requiring him to render the returns " * * * showing each disposition by you to each customer on each day, whether by sale, consignment, delivery or otherwise, and each loss by fire, theft, spoilage, destruction, or otherwise, of the following named substances in the quantities specified: 300 pounds or more Sugar (all types) * * *" [2]   The

fourth paragraph of that letter reads as follows:

"You are further directed to keep at your place of business such records relating to or connected with all dispositions of the above-mentioned substances in the quantities specified as will enable you to make proper returns. These records must be available for inspection upon demand by any officer or employee of the Alcohol and Tobacco Division."

On August 20, 1957, Mr. McConnell went to defendant's place of business in Blountstown, Florida, and identified himself to the defendant. The following then took place, according to McConnell's testimony at the trial:

"A.  Well, I asked Mr. Newman to let me examine his sales records and he asked me what I meant by 'examining them.' I told him I would like to check all of his sales of sugar to determine whether or not he had made the proper reports. And, Mr. Newman, said: 'I don't want to be mean or stubborn about this thing but do you have the right to examine these records?' And, I told him yes, Mr. Newman, I do and I proceeded to read him paragraph 4 of the demand letter wherein it states that he shall maintain records and they shall be open for inspection at any time by an officer or employee of the Alcohol and Tobacco Tax. Upon reading this to Mr. Newman he said, 'well, all right' and asked me what records I wanted. I told him I wanted his purchase invoices covering the sugar in 1957, from January through August, and all of his sales invoices covering the sale of sugar. He told me that he did not have them available but to come back the next day at 10:00 o'clock in the morning and he would have them. I returned the next morning to Mr. Newman's warehouse and he pointed out two large

---

2. That letter was dated January 27, 1954, and the defendant's acknowledgment of receipt was dated February 15, 1954.

boxes of yellow invoices, I think they were called dray receipts, they were his sales invoices covering the sale of sugar and other commodities to persons and stores. We also searched his files that he produced, the purchase invoices of sugar from two large refineries in New Orleans. We then fixed up a spot in the back of his warehouse where I could audit his records. I totalled up his sugar purchases for 1957 * * *.

"* * * We then compared these sales of sugar of three hundred pounds or more with the sales listed on Form 169 submitted to our office and we found we had 179 sales of sugar of three hundred pounds or more that had not been reported as required by law."

Mr. McConnell returned to the defendant's place of business on July 30, 1958, and according to Mr. McConnell:

"We again talked to Mr. Newman and explained to him that we wanted to audit his sales records for the period of January 1st, 1958 through July 30th, 1958, to determine whether or not all sales were being reported as required. He again pulled out his sales invoices and purchase invoices and conducted the same type of audit. It contained the total amount of about fifty-five sales that had not been reported as required * * *."

Upon the trial, the defendant objected to McConnell's relating any facts found among the books upon the ground that no search warrant had been offered in evidence and that the receipt of the evidence would be contrary to the Constitution of the United States. The district court overruled the objection.

■ The Government insists that a motion to suppress the evidence should have been made prior to the trial under Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.A. Under that rule, the district court exercises its discretion to entertain or to refuse to entertain the objection or motion at the trial. The court did entertain and overrule the defendant's objection. We must therefore treat the objection as seasonably made.[3]

■ When Mr. McConnell asserted a right to examine the records, and read to the defendant paragraph 4 of the demand letter (which has been quoted), the defendant's acquiescence was not an intentional waiver of his constitutional rights, but was a mere submission in an orderly manner to the claimed authority of a federal agent.[4]

■ If there was adequate legal authority for paragraph 4 of the demand letter, which directed the defendant to keep the records and to make them available for inspection upon demand, then the defendant cannot successfully object that the examination of the records constituted an unreasonable search or that he was unconstitutionally compelled to be a witness against himself.[5]

If the records were voluntarily kept in the ordinary course of business, or were kept pursuant to some lawful requirement, then authority for their examination would be found in Section 7602 of the Internal Revenue Code of 1954:

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of

3. Giacona v. United States, 5 Cir., 1958, 257 F.2d 450, 455.

4. Johnson v. United States, 1948, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436; Amos v. United States, 1921, 255 U.S. 313, 317, 41 S.Ct. 266, 65 L.Ed. 654; Canida v. United States, 5 Cir., 1958, 250 F.2d 822, 825.

5. Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 195, 66 S.Ct. 494, 90 L.Ed. 614; United States v. Morton Salt Co., 1950, 338 U.S. 632, 651–652, 70 S.Ct. 357, 94 L.Ed. 401; Shapiro v. United States, 1948, 335 U.S. 1, 33, 68 S.Ct. 1375, 92 L.Ed. 1787; Falsone v. United States, 5 Cir., 1953, 205 F.2d 734, 739; Davis Administrative Law Treatise, §§ 3.05 and 3.09.

any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry." 26 U.S.C.A. § 7602(1).

The authority for paragraph 4 of the demand letter is contained in Section 173.25 of Title 26, Code of Federal Regulations:

"173.25 *Records required.* Every person in the United States who disposes of any substance or article, as defined in §§ 173.16 or 173.6, and who has been required to render returns, shall maintain at his place of business such books, records, documents, papers, invoices, bills of lading, etc., relating to or connected with any such disposition, as will enable such person to make the required return. Such books, records, documents, papers, invoices, bills of lading, etc., shall be maintained for a period of three years and shall be kept readily available for, and open to, inspection by any Internal Revenue Officer during the hours of business of such person."

The Acting Secretary of the Treasury, in turn, referred for his authority to prescribe the regulation at the beginning of Part 173, as follows:

"Authority: §§ 173.1 to 173.31 *issued under 68A Stat. 917; 26 U.S. C. 7805.* Interpret or apply 68A Stat. 596, 639, 657, 685, 700, 895; 26 U.S.C. 5001(a) (6), 5213(a), 5305, 5609, 5686, 7502." (Emphasis supplied.) 20 Federal Register 4818, issue of July 7, 1955.

The Third Circuit has held that such a regulation could not be validly issued under the limited authority contained in Section 5213(a), *supra,* so as to make its willful violation a criminal offense. (See Section 5609, quoted *supra.*) United States v. Fish, 3 Cir., 1940, 108 F.2d 969.[6] The opinion in that case recognized the distinction here pertinent, when it said:

"At first blush it might appear that the cases of the United States v. Goldsmith, 2 Cir., 91 F.2d 983; DiSanto v. United States, 6 Cir., 93 F.2d 948, and United States v. Tishman, 7 Cir., 99 F.2d 951, are contrary to this conclusion. None of those cases, however, involved a count under Article III for failure to keep books and records." 108 F. 2d at page 973.

Section 7805(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7805 (a), referred to by the Acting Secretary as the source of his authority to issue the regulation, reads as follows:

"(a) *Authorization.*—Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary or his delegate shall prescribe *all needful rules and regulations for the enforcement of this title,* including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue." (Emphasis supplied.)

That authority could be carried out by making regulations of the character of that provided in Section 173.25 of Title 26, Code of Federal Regulations, quoted *supra,* without extending the provision of Sections 5213(a) and 5609 so as to

---

**6.** Since the present case arose, Section 5213(a) has been, in effect, amended apparently to meet that decision. Pub.L. 85–859, Title II, Sec. 201, Sept. 2, 1958, 72 Stat. 1373, 26 U.S.C.A. § 5291. For legislative history see 3 U.S.Code Congressional and Administrative News, 1958, 85th Congress, Second Session, p. 4561. It is not necessary for us to consider the validity vel non of Section173.31 of the same Regulations prescribing the penalties under Sections 5213(a) and 5609 of the Internal Revenue Code of 1955, either before or after this amendment to Section 5213(a).

make the willful violation of the Regulation a criminal offense.[7]

We conclude that there was lawful authority for paragraph 4 of the demand letter directing the defendant to keep the records and to make them available for inspection upon demand, and, hence, that the defendant was not subjected to an unreasonable search, and was not unconstitutionally compelled to be a witness against himself. The judgment is

Affirmed.

---

7. This sentence is a paraphrase of the language of the Supreme Court in United States v. Eaton, 1902, 144 U.S. 677, 687, 12 S.Ct. 764, 36 L.Ed. 591.