UNITED STATES of America,
Plaintiff,

v.

J. B. KRAMER GROCERY CO., Inc. and
James B. Kramer, Defendants.

No. B–68–CR–4.

United States District Court
E. D. Arkansas, N. D.

Jan. 7, 1969.

W. H. Dillahunty, U. S. Atty., and James R. Rhodes, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

W. J. Arnold, Batesville, Ark., for defendants.

### Memorandum Opinion

HENLEY, Chief Judge.

This criminal case involving alleged violations of the Food, Drug and Cosmetic Act of 1938, 21 U.S.C.A. § 301 et seq., is now before the Court on two motions to suppress evidence filed by the corporate defendant, J. B. Kramer Grocery Co., Inc., and by the individual defendant, James B. Kramer. The first motion is based upon the Fourth Amendment to the Constitution of the United States prohibiting unreasonable searches and seizures. The second motion is based upon the Fifth Amendment's prohibition of compulsory self-incrimination. The Court's view as to the first motion renders consideration of the second unnecessary.

The indictment is in four counts. Each of the counts charges in substance that on or about August 17, 1967, the defendants violated section 301(k) of the Act,

21 U.S.C.A. § 331(k), by permitting food which had been shipped in interstate commerce and which was being held for sale to become adulterated as a result of contamination by insects and rodents. As far as the corporate defendant is concerned, the indictment alleges a prior conviction of that defendant in early 1967 so that the charges against it amount to felonies. 21 U.S.C.A. § 333 (a). The charges against the individual defendant amount to misdemeanors only. Ibid.

The corporate defendant is a wholesale grocery concern operating in Batesville, Arkansas. The individual defendant is the corporate defendant's president and its principal, perhaps sole, stockholder. The company receives food products which have been shipped in interstate commerce and holds them for sale for ultimate human consumption. Hence, the company is subject to the provisions of the Act.

The instant prosecution is based upon a warrantless inspection of the defendants' warehouse on August 15, 16, and 17, 1967, which inspection was purportedly authorized by section 704(a) of the Act, as amended by the Act of February 7, 1953, 21 U.S.C.A. § 374(a). Samples of food products were taken and records of the corporate defendant showing the interstate movement of quantities of food were examined.

Section 704(a) must be read in connection with section 301(f), 21 U.S.C.A. § 331(f). Section 704(a) as written after the 1953 amendment which has been mentioned permits a warrantless inspection of business premises by inspectors of the Food & Drug Administration upon presentation of credentials and upon service of an inspection notice. Section 301 (f) makes it a criminal offense for an owner or custodian of premises to refuse to permit the search authorized by section 704(a).[1] The penalty for refusal to permit the search is the same as that prescribed for a violation of the Act's substantive requirements with respect to the condition and contents of the inspected premises.

The provisions of sections 704(a) and 301(a) are typical provisions which have appeared historically in "factory inspection" legislation adopted under the police power for the protection of the public health, safety, and welfare. Prior to June 7, 1967, the general validity of such provisions seemed to be established by the decision of the Supreme Court in Frank v. Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877.

Acting under section 704(a) the Food & Drug Administration (FDA) has made at least three inspections of the Kramer premises, the first being made in 1966. In each instance the inspection was made by FDA Inspector Marvin Taunton, and in each instance alleged violations of the Act were discovered. The 1966 inspection did not result in criminal charges. The second inspection, made early in 1967, resulted in a misdemeanor charge being filed against the corporate defendant; the corporation pleaded guilty and was fined a moderate amount.[2] As has been stated the final inspection made in August 1967 resulted in felony charges

---

1. Prior to the 1953 amendment section 704(a) did not authorize an inspection of premises without the consent of the owner; however section 301(a) made it an offense to refuse consent. The anomaly of that situation was recognized by the Supreme Court in United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L. Ed. 200, wherein it was held that a conviction of an individual under section 301(a) for refusing to agree to a section 704(a) inspection could not be upheld. Some months after *Cardiff* was decided Congress amended section 704(a) so as to eliminate the requirement of consent; section 301(a) was not disturbed.

2. In connection with that charge Mr. Kramer pleaded that his difficulty was due in part to lack of money, and the Court's moderation in assessing punishment was based in part upon the Court's belief that to impose a large fine on the corporation would inhibit any efforts to improve the physical condition of the business premises and in the long run would tend to defeat the purpose of the Act.

against the corporation and misdemeanor charges against Mr. Kramer personally.

On June 7, 1967, a little over two months prior to the commencement of the August inspection of defendants' premises the Supreme Court of the United States handed down two decisions important in present context. Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943. In each case the petitioner had been convicted in a local municipal court of having refused to permit a warrantless search of his premises as authorized by municipal health ordinances. The convictions were based upon ordinance provisions essentially similar to the provisions of section 301(f) of the Food, Drug & Cosmetic Act. Camara involved residential premises; See involved commercial property. In both cases the convictions were reversed.

Expressly overruling Frank v. Maryland, supra, the Supreme Court, while recognizing the importance and social desirability of "factory inspection" legislation designed to eliminate health and safety hazards, held by a vote of six to three that such legislation is subject to the Fourth Amendment, and that a person may not be convicted of a crime for refusing to submit to a warrantless inspection of his premises whether residential or commercial.

While those cases involved criminal prosecutions for refusing to permit warrantless searches and did not involve any question of suppression of evidence, the decisions clearly imply that if an unlawful search of premises is made under such legislation, evidence obtained as a result of the search is subject to being suppressed in a prosecution for a violation of the health or safety requirements or prohibitions of the legislation. The impact of Camara and See upon the inspection provisions of the Food, Drug & Cosmetic Act has been recognized in United States v. Stanack Sales Co., 3 Cir., 387 F.2d 849, which was argued in September 1967 and decided in January 1968.

Relying upon Camara and See defendants here contend that the warrantless inspection of the Kramer premises which resulted in this prosecution was unlawful, and that the evidence produced as a result of the inspection should be suppressed. That evidence includes not only the samples of allegedly contaminated food taken by Inspector Taunton but also his testimony with respect to the condition of the premises and contents thereof.

In resisting the motion the Government does not contend that Inspector Taunton would have had the right to inspect the premises without a warrant over the objection or opposition of Mr. Kramer. The position of the Government is that Mr. Kramer did not object to the inspection, and that he actually or constructively consented thereto, and that both he and his corporation are bound by his alleged consent.

 No one questions the proposition that an owner of premises may waive the protection of the Fourth Amendment, and that such protection is waived by a consent to search provided that the consent is voluntary. Where the consent is the product of express or implied coercion, fraud, misrepresentation, or the like, evidence obtained as a result of the search may be suppressed on timely motion. Where the Government relies on consent to justify a warrantless search, the burden is on the Government to prove the existence and validity of the consent by clear and convincing testimony. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; Maxwell v. Stephens, 8 Cir., 348 F.2d 325; Roberts v. United States, 8 Cir., 332 F.2d 892, aff'g United States v. Roberts, E.D. Ark., 223 F.Supp. 49.

 While a valid consent may justify a warrantless search which, absent the consent, would be prohibited by the Fourth Amendment, it is important to recognize that "consent" to a search and a mere acquiescence to an assertion of legal authority to search are two dif-

ferent things, and the one is not tantamount to the other. Bumper v. North Carolina, supra; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Newman v. United States, 5 Cir., 277 F.2d 794; United States v. Lantrip, E.D.Ark., 74 F.Supp. 946.

■ The question of whether a valid consent to a warrantless search has been given is one of fact and is to be decided on a case to case basis. United States v. Roberts, supra, 223 F.Supp. at 59. The Court finds the facts leading up to and surrounding the inspection of the Kramer premises to be as follows:

Throughout their difficulties with FDA the defendants have had the advice and assistance of experienced and capable counsel. Prior to the inspection here involved Mr. Kramer had inquired of his attorney as to whether he had any legal right to refuse to permit FDA inspectors to enter and inspect the grocery company premises. Kramer was advised by letter that he had no such right; that he was required to submit to the inspections; and that if he refused to do so, he would be liable to prosecution under section 301(f) regardless of the condition of the premises or of the contents thereof. While the record is silent as to the date of that letter, it seems not to be contended that *Camara* and _ᵤe_ had been decided when it was written or that, in any event, either Kramer or his attorney was aware of those decisions when the inspection was made.

On August 15 Mr. Taunton arrived on the premises at a fairly early hour; he had his credentials with him and had prepared in advance a notice of inspection which he planned to serve on Mr. Kramer. When Taunton presented himself at the office of the grocery company, Kramer excused himself and went into the warehouse proper where he remained for about an hour, finally reappearing in the office at the repeated insistence of Taunton. Kramer testified that his presence in the warehouse was required in connection with service to his customers, and in his testimony he accused Taunton of harassing him and his clerical personnel.

Taunton suspected that Kramer was trying to delay or frustrate the inspection, and when Kramer finally returned to the office, Taunton accused him of playing a "delaying game." Kramer replied that when a visitor called unexpectedly upon his wife, she always liked to have a chance to clean up any dirty dishes in the kitchen, the intimation being that Taunton should have given advance notice of his intended inspection. Taunton then stated that it was not the practice of FDA to give advance notices of inspections since the inspectors desired to see the premises and contents in their normal conditions. After that exchange of words, or in the course of it, Taunton served his inspection notice and began his work which was completed on August 17.

Kramer testified that when Taunton first appeared, he stated affirmatively that he had a right to inspect the premises and that there was nothing that Kramer could do about it. Regardless of whether Taunton made that particular statement, the Court finds that he asserted authority to inspect without a warrant and did not suggest to Kramer that he could insist upon a warrant as a condition to the right to search.

As has been seen, there was an exchange of words between Taunton and Kramer prior to the former's commencement of the inspection. It is abundantly clear from the evidence that Kramer dislikes Taunton personally, and it may be that Taunton has no regard for Kramer. But, there is no suggestion that Kramer was subjected to any physical coercion, force, or threat of force, and he was not under arrest at any time prior to or during the inspection. Kramer is a business man of mature years, and he does not appear to have been afraid of or overawed by Taunton.

On the other hand, it is clear that Kramer did not want the premises to be

inspected but was under the impression that a right to inspect existed, and that a refusal on his part to permit the inspection would or might result in a criminal prosecution.

The Court has given careful consideration to the evidence in the light of the principles and authorities set forth above. Not without some reluctance, the Court has come to the conclusion that the motion to suppress must be sustained.

The Court has no quarrel with the numerous cases cited by counsel for the Government in his thorough brief; the Court simply does not think that they are applicable to the facts and circumstances of this particular case which presents the narrow question of whether there was a valid consent to this particular search.

As the Court sees it, the basic weakness in the Government's consent argument is that the inspection was not predicated on any supposed consent on the part of Kramer. The Court finds on this point that Inspector Taunton asserted a legal right to make the inspection on the strength of his credentials and the notice of inspection, and further finds that Kramer did no more than yield to the demand of Taunton under the mistaken belief, perhaps shared by Taunton himself, that Kramer had no alternative, and that he would or might be prosecuted if he resisted the inspection. Actually, the Government's claim of consent is but an afterthought produced by the motion to suppress.

The facts in this case are not dissimilar to those presented in United States v. Lantrip, supra, which Judge Lemley decided more than twenty years ago. In that case federal officers without a warrant went upon the premises of Lantrip in search of a still. They contacted Lantrip, identified themselves, displayed their badges and indicated a desire to search his barn. He acceded to the request, and a still was found. Having been indicted, Lantrip filed a motion to suppress the evidence found in the barn, which motion was sustained. The Court

rejected the Government's argument that the defendant had consented to the search and found that the words and actions of the defendant relied on by the Government were to be "attributed to a peaceful submission to the officers of the law; that is to say, the defendant acquiesced in the search rather than consented thereto." (74 F.Supp. at 949.)

In the course of its opinion the Court stated that Lantrip was "an unlettered man," and that it was "patent to the court that he did not know what his constitutional rights were under the circumstances." (Ibid.) While it cannot be said in this case that Mr. Kramer was or is an "unlettered man," he was in no better and was in fact in a somewhat worse situation in confrontation with Taunton than was Lantrip in confrontation with the agents of Alcohol and Tobacco Tax Unit of the Treasury Department. While Lantrip was merely ignorant of his rights, Kramer had been advised by counsel that he had no right to resist the inspection; that advice was sound when given, but without the knowledge of Kramer or his attorney had become out of date.

In Newman v. United States, supra, the defendant was convicted of having made a sale of sugar, used in the production of distilled spirits, without having made a proper report of the sale to the Treasury Department. Prior to the investigation which led up to the indictment, defendant had received a letter of demand from the Government which, among other things, advised him that he must keep proper records of his sugar sales, and that those records were required "to be available for inspection upon demand by any officer or employee of the Alcohol and Tobacco Division." The defendant was called upon by an agent of the Division who demanded to inspect defendant's records and who read to the defendant the pertinent portion of the demand letter. The defendant then permitted his records to be inspected. While the Court held that the demand was a lawful one, it was pointed out that defendant's permitting his records to be

inspected "was not an intentional waiver of his constitutional rights, but was a mere submission in an orderly manner to the claimed authority of a federal agent." (277 F.2d at 797.)

The distinction between a consensual waiver of rights under the Fourth Amendment and a simple submission to asserted authority was emphasized by the Supreme Court in Bumper v. North Carolina, supra. In that case State officers who may or may not have had a search warrant, which warrant, if extant, may or may not have been valid, went to the home of defendant's mother, which was also the home of the defendant, and advised the mother that they had a search warrant and desired to search the premises; they did not show her any warrant, but she agreed to the search. Incriminating evidence was found which the defendant later moved to suppress. In resisting the motion the State did not rely upon any warrant but solely upon the alleged consent of the mother. The motion was overruled, and the defendant was convicted. On ultimate review by the Supreme Court of the United States the conviction was overturned. The Court said (pp. 548–550 of 391 U.S., pp. 1791–1792 of 88 S.Ct.):

"The issue thus presented is whether a search can be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.

"When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent."

While the facts in *Bumper* are distinguishable from the facts in the instant case, the Court thinks that the principles announced in *Bumper* are applicable here. It is true that Taunton did not tell Kramer that he had a search warrant, but he did assert an authority to inspect, and he served upon Kramer a notice of inspection which did not advise Kramer that he had a right to refuse to permit a warrantless inspection. Further, although certain coercive factors present in the Bumper case are not present here, Kramer was under the coercive force of his belief, apparently well founded, that if he refused to permit the inspection, he was subject to prosecution.

■ No useful purpose would be served by further extending the discussion. As indicated, the Court finds and concludes that the evidence produced by the challenged inspection must be suppressed. However, the Court desires to make clear what it is not holding. It is not holding that warrantless inspections of business premises by inspectors of FDA are unconstitutional *per se;* such inspections would appear to be perfectly valid assuming actual voluntary consents. Nor is the Court holding that FDA inspectors are necessarily required affirmatively to advise the owners or custodians of premises to be inspected that they are not required to submit to inspections without warrants. What the Court holds is simply this: that in the circumstances shown by the evidence in this case James B. Kramer did not effectively waive by consent the protection to his business premises afforded by the Fourth Amendment, and that the August

1967 inspection of those premises was unlawful.

An order sustaining the motion to suppress will be entered. If, as is probable, the suppression of the evidence aborts the prosecution, the Government may well be able to appeal under the provisions of section 1301 of the recently adopted Crime Control Act of 1968, which section amends section 3731 of Title 18, U.S.C.A. Act of June 19, 1968, P.L. 90–351, § 1301.