**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raul Ortiz COLON, Defendant-Appellant.**

**No. 76–3292.**

United States Court of Appeals, Fifth Circuit.

Oct. 3, 1977.

---

Marion T. Carson, Charles J. Lieck, Jr., San Antonio, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK and GEE, Circuit Judges, and MARKEY,* Chief Judge.

MARKEY, Chief Judge:

Following an investigation by agents of the Drug Enforcement Administration (D.E.A.), appellant Colon and Oscar Espinoza were arrested and charged with violation of the federal narcotics laws in a three-count indictment.

Count One charged the pair with conspiracy to distribute heroin, a Schedule I controlled substance, over the period October 8 to 16, 1975, in violation of 21 U.S.C. §§ 841(a)(1) and 846. In Counts Two and Three, Colon was charged with aiding and abetting the distribution of heroin on October 8 and 16, 1975, respectively, in violation of 18 U.S.C. § 2, and Espinoza was charged with distribution of heroin on the same dates, in violation of 21 U.S.C. § 841(a)(1).

Espinoza pleaded guilty as charged and testified against Colon.

The jury found Colon guilty on Counts One and Three and not guilty on Count Two. Colon was sentenced to 15 years imprisonment with a special parole term of 15 years on the conspiracy charge and to five

* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

years imprisonment with a special parole term of 10 years on the aiding and abetting charge, the sentences to be served consecutively.

On January 29, 1976, two weeks after Colon's arrest, D.E.A. agents, acting upon an informant's tip, executed a search warrant upon an apartment in San Antonio, Texas, in which they found and seized seven grams (approximately one-half ounce) of heroin and paraphernalia usable in the processing of heroin. That evidence was introduced at trial for the purpose of proving Colon's intent with respect to the violations charged.

## ISSUE

■ The dispositive issue is whether the trial court erred in denying Colon's motion to suppress the evidence obtained during execution of the search warrant.[1] Colon contends that the warrant was issued on the basis of an affidavit insufficient to establish probable cause and thus in contravention of the Fourth Amendment.[2] After careful review, we find the affidavit defective and the search warrant therefore void.

## OPINION

■ As was stated in *Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933):

Under the Fourth Amendment, [a magistrate] may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough.

Probable cause is deemed to exist

where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed.

*Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967).

The affidavit at bar contained the following allegations, purporting to establish probable cause:

1. Checking the records of the San Antonio City Public Service Board, D.E.A. agents found that Raul *Lopez* Colon paid the utility bills for apartment # 7, 555 Club Drive, San Antonio; that the application for utility service stated that he was the operator of the Caribe Club in San Antonio, and that he had formerly resided in New York, N.Y.

2. Appellant, Raul *Ortiz* Colon, stated at the time of his arrest that he operated the

---

1. There was a question at trial regarding the timeliness of Colon's motion, filed on the morning of the first day of trial. However, where, as here, the district court in its discretion entertains a motion to suppress, apparently denying it on the merits and not because of delay, it must be regarded as timely. *Newman v. United States*, 277 F.2d 794 (5th Cir. 1960). Absent evidence that Colon had abandoned the items seized, *Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 *rehearing denied*, 362 U.S. 984, 80 S.Ct. 1056, 4 L.Ed.2d 1019 (1960), or had vacated the apartment, *Feguer v. United States*, 302 F.2d 214 (8th Cir.), *cert denied*, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962), he had standing to file the motion under the criteria in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

   Colon's motion was first presented before the jury was brought in. At that point the trial judge stated: "I'd like to look at the warrant and see if it is sufficient. He made the contention also that the warrant is not sufficient . . . . I'd have to look at that"; and ruled:

I'm going to overrule your motion but I will give you an opportunity during . . . trial if the evidence suggests it for you to reurge it." When Colon again moved during trial, the judge stated that "as to whether or not the search warrant was based on probable cause by an unreliable informant, I'm willing to have an *in camera* hearing or whatever you think I need to have on this." The record does not reflect that an *in camera* hearing was had.

2. Colon raises other issues, viz., whether the trial court erred in (1) not ordering disclosure of the identity of a confidential informant who introduced a D.E.A. agent to Espinoza and not holding an *in camera* examination of the informant; (2) permitting the introduction of hearsay evidence, there allegedly being no independent evidence of a conspiracy; and (3) allowing introduction of evidence concerning a subsequent similar offense. In view of our decision on the legality of the search, we need not consider these issues.

Caribe Club and formerly resided in New York; his domicile was 533 W. Mistletoe, San Antonio.

3. At the time of Colon's arrest, a confidential informant, proven reliable on several occasions, told the agent in charge of the investigation that Colon had just received a large quantity of heroin.

4. The same informant also stated that Colon told him that he (Colon) never kept heroin at the house on Mistletoe.

5. The San Antonio police executed "at least one" prior search warrant at Colon's house on Mistletoe, the results of which were negative.

6. Surveillance by D.E.A. agents indicated that no one had entered apartment # 7 since Colon's arrest.

7. Colon had a reputation among law enforcement agencies of violating narcotics laws, had been arrested for such violations in the past, and was presently under arrest for violation of narcotics laws.

■ The affidavit is, of course, subject to the two-pronged test developed in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), requiring a determination of whether the magistrate had been informed of underlying circumstances from which (1) the informant concluded that criminal activity was being conducted as alleged, and (2) the affiant concluded that the informant was credible or his information reliable. The inquiry is concerned with facts supporting the informant's conclusion, the manner in which knowledge of those facts was acquired, and the basis for reasonable reliance on the informant's veracity.

■ Should the affidavit fail to pass muster under *Aguilar*, allegations tending to corroborate the informant's report may nonetheless support a finding of probable cause. In *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the informant's tip that Spinelli was bookmaking in an apartment was held insufficient to support a finding of probable cause, even though the informant had supplied Spinelli's phone numbers and the agents had confirmed them with the phone company. Nevertheless, the Court recognized that an informant's tip which fails to communicate the manner in which his information was gathered may still support a finding of probable cause if it describes the accused's activity in such detail as to be, in effect, self-verifying.[3] Moreover, an affiant's independent investigation may corroborate details supplied by the informant, and thus provide some verification of an informant's veracity.[4] And a trustworthy informant's tip may be considered in conjunction with an affiant's independent investigation where that investigation reveals abnormal or suspicious activity. Cf. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d

**3.** The Court referred to *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959):

> While Hereford, the Government's informer in that case, did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way. [Footnote omitted.]

*Spinelli v. United States, supra,* 393 U.S. at 416–17, 89 S.Ct. at 589.

**4.** In *Spinelli*, the Court again referred to *Draper* in relation to independent verification of an informant's report:

> There, the police, upon meeting the inbound Denver train on the second morning specified by informer Hereford, saw a man whose dress corresponded precisely to Hereford's detailed description. It was then apparent that the informant had not been fabricating his report out of whole cloth . . . .

393 U.S. at 417, 89 S.Ct. at 590.

62, *rehearing denied,* 386 U.S. 1042, 87 S.Ct. 1474, 18 L.Ed.2d 616 (1967).[5]

■ In the case before us, the informant's tip consists only of the statement that Colon had received a large quantity of heroin (with no indication of how the informant knew that "fact"), and that Colon had told him no heroin was kept in his Mistletoe residence. The informant did not identify the searched apartment as the place where incriminating evidence might be found, or report any facts which might point to that, or any other, apartment. The agents, employing their own investigative methods, learned that a Raul Lopez Colon paid utility bills for an apartment # 7 on Club Drive. "Putting two and two together," the D.E.A. agents reasoned that if Colon had "just received" a large quantity of heroin, he must have secreted it somewhere other than at the house on Mistletoe, and concluded that the searched apartment must be a hiding place for heroin. Though the diligence and efficiency with which the D.E.A. agents pursued their task may be admired, such considerations cannot substitute for the necessary establishment of probable cause for issuance of the search warrant.

The informant's tip simply fails to meet the requirement in *Aguilar* that the magistrate be informed of the basis for the informant's conclusion that criminal activity is involved. That portion of the informant's report relating that Colon had received a large quantity of heroin, being the sole allegation of criminal activity, must be considered the linchpin of the affidavit. But the statement is one of ultimate fact, providing no underlying facts from which it may have been derived. No magistrate could possibly determine from the affidavit whether the allegation rested on the informant's observation or on some other reliable foundation. For all that appears, it might have originated as "a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States, supra,* 393 U.S. at 416, 89 S.Ct. at 589. Moreover, the informant's report is devoid of the sort of detail (as in *Draper*) from which "a magistrate . . . could reasonably infer that the informant had gained his information in a reliable way." Id. at 417, 89 S.Ct. at 589. Disintegration of the tip regarding Colon's receipt of heroin causes the entire structure supporting the warrant to crumble.

The allegation that Colon told the informant that he never kept heroin at his house is not, of course, an allegation of criminal activity. Nor may it serve in support of a finding of probable cause to search the apartment here involved. Even if it be assumed that the naked report of receipt of heroin is acceptable without more, the indication of one place where heroin is *not* kept left open the entire world and did not in itself implicate the searched apartment as the place where heroin was stored at the time the search warrant was issued. Moreover, the affidavit is silent regarding the circumstances under which Colon's alleged statement concerning his house on Mistletoe was made. The magistrate could not have learned from the affidavit whether the statement was made by a narcotics dealer (Colon) to a prospective buyer (informant) under circumstances providing some measure of trustworthiness (cf. *United States v. Dunnings,* 425 F.2d 836 (2d Cir. 1969), *cert. denied,* 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970)), or in response to questioning, or to a casual acquaintance under circumstances indicating it was made in jest.

The flaw in the informant's tip, considered apart from the remainder of the affidavit, is at least as great as that in

5. For a detailed analysis of the applicable standards for evaluating the sufficiency of an affidavit in support of a search warrant, see Moy-

lan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L.Rev. 741 (1974).

*Spinelli, supra.*[6] The tip may have been enough to lead to a reasonable suspicion that Colon had secreted heroin somewhere, but suspicion is not probable cause, *Nathanson v. United States, supra,* 290 U.S. at 47, 54 S.Ct. 11, and the tip in the present case could not itself arouse even a suspicion that the searched apartment contained heroin.

The United States has not attempted to justify the skeletal nature of the informant's tip, reiterating instead other elements of the affidavit, and concluding that "[s]uch a wealth of specificity was clearly sufficient to provide the issuing magistrate with the type of information necessary for him to make a determination of probable cause." The specifics appearing in the allegations of the affiant arise from the independent investigation by the D.E.A. and are not of such nature as to transform the suspicions aroused by the informant's tip into a belief that evidence of a crime would be found in the searched apartment. Thus the D.E.A.'s investigation cannot be said to have confirmed the informant's tip in the manner described in *Spinelli.*

The surveillance of the apartment, maintained for nearly a week while Colon was incarcerated, merely established that no one was seen entering or leaving, in stark contrast to the police surveillance in *Gonzales v. Beto,* 425 F.2d 963 (5th Cir.), *cert. denied,* 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970), during which several persons known by the police to be users of narcotics entered and left the house in which (according to the informant's tip) narcotics were kept. That no one entered the searched apartment for a week may have indicated the possibility that it belonged to the incarcerated Colon, but could not indicate its use for the storage of narcotics.

The investigation by D.E.A. agents unearthed the payment of utility bills by one with a similar name and background. From that fact, the agents reasoned that Colon was maintaining an apartment aside from his legal residence, which, as above indicated, does not in itself evince criminal activity.

The affiant's statement that the San Antonio Police Department had executed "at least one" previous search warrant for narcotics at Colon's house on Mistletoe, the results of which were negative, could serve to buttress only the informant's statement that Colon said he never kept heroin there. It thus suffers from the same defects as the informant's statement, i. e., a failure to substantiate alleged criminal activity or to implicate the searched apartment as the place of heroin storage.

Neither Colon's reputation among law enforcement agencies, as a violator of narcotics laws, nor his past or present arrests for narcotics violations can supply the required, but absent, factual underpinnings to support a finding of probable cause for issuance of the warrant to search apartment # 7, 555 Club Drive.[7]

The argument that the totality of the circumstances renders the search warrant

---

6. The flaw in *Spinelli* was thus described by the Court:

   > Perhaps even more important is the fact that *Aguilar's* other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable.

   393 U.S. at 416, 89 S.Ct. at 589.

7. In *United States v. Reynolds,* 111 F.Supp. 589 (D.C.D.C.1953), the allegations in the affidavit were more specific than those at bar. The affiant there received information from a reliable source that Reynolds had secreted a large quantity of narcotics in the basement of his house, and that Reynolds was a known peddler of narcotics in Washington, D.C. The detective found that Reynolds had been previously convicted of a narcotics violation and that the premises identified by the informant were listed in the Assessor's Office of Washington, D.C. as belonging to Reynolds. The information on which the affidavit was based was found insufficient to establish probable cause.

valid must be rejected in favor of a "more precise analysis." *Spinelli v. United States, supra,* 393 U.S. at 415, 89 S.Ct. 584. Moreover, "[i]t is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." *Aguilar v. Texas, supra,* 378 U.S. at 109 n.1, 84 S.Ct. at 1511.

Thus, it was error to deny Colon's motion to suppress the seized evidence, the magistrate's erroneous finding of probable cause having been based on information which failed to meet the standards in *Aguilar* and *Spinelli.*

█ Because it is now impossible to determine the extent to which the challenged evidence may have influenced the jurors' minds, Colon must be granted a new trial, notwithstanding the presence of substantial admissible evidence supporting the verdict. *Leahy v. United States,* 272 F.2d 487 (9th Cir. 1959), *cert. granted,* 363 U.S. 810, 80 S.Ct. 1246, 4 L.Ed.2d 1152 (1960), *cert dismissed,* 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961).

Reversed and remanded for a new trial.