Allan RHOADES and David EMMERLING
*v.* STATE of Arkansas

CA CR 80-31                              607 S.W. 2d 76

Court of Appeals of Arkansas
Opinion delivered October 29, 1980
Rehearing denied December 3, 1980

*R. David Lewis*, for appellants.

*Steve Clark*, Atty. Gen., by: *Joseph H. Purvis*, Deputy Atty. Gen., for appellee.

DAVID NEWBERN, Judge. The main question presented is whether the trial court erred in admitting into evidence marijuana seized at the time the appellants were arrested. That issue centers upon the decision in *Lewis* v. *United States*, 385 U.S. 206, 87 S. Ct. 424 (1966), and the problem presented when an undercover police agent obtains entry into a suspect's home by ruse, and the entry results in the seizure of contraband. The state has asked us to extend the rationale of the *Lewis* case. There, an arrest occurred as a result of analysis of contraband which was pursued and carried away by an undercover police agent who had gained entry by deception. Here, a "seizure" occurred on the premises to which entry had been obtained by deception. We agree the *Lewis* rationale may be so extended, and thus we affirm. The appellants have raised other points which will also be discussed.

With the assistance of undercover police officer Sylvester, the appellants assembled a large quantity of marijuana at the mobile home of the appellant Rhoades and his spouse. The reason it was brought there was so that it might be purchased by Sylvester who was posing as a "big money man" who wanted to purchase a large quantity of marijuana. Sylvester had been introduced to Mr. and Mrs. Rhoades by a police informant who had worked with Michigan authorities and who had informed Arkansas officials that a large quantity of marijuana could be purchased from the Rhoades. Sylvester had rejected the first offer of marijuana by the Rhoades because it was of insufficient quality. This led them to seek more and better marijuana from appellant Emmerling's home at Fairfield Bay and from another source

in Texarkana. Sylvester ultimately helped place the assembled marijuana in some 24 bags in the Rhoades' home. On the pretext of leaving to obtain the purchase money from his car, Sylvester moved his car to the front door of the Rhoades' home and raised the trunk lid, thus signaling an assembled surveillance team of officers to approach the home. Sylvester then entered again and announced he was a police officer and that the appellants were under arrest for possession of marijuana. No warrant for the arrest or search or seizure had been issued.

## 1. *Warrantless seizure.*

In *Lewis* v. *United States, supra*, the undercover police officer, as in this case, had been invited into the defendants' home for the purpose of purchasing narcotics, and the defendants contended the intrusion violated the Fourth Amendment to the United States Constitution. There, no warrant had been issued as in this case, but there is an important factual distinction between the cases. In *Lewis*, no contraband was seized. Rather, marijuana was purchased by the undercover police officer and taken away from defendants' home. The arrest occurred later.

The contention of the defendant in the *Lewis* case was that the entry upon his premises was obtained by fraud and that thus the marijuana removed from his premises should not have been introduced into evidence. The United States Supreme Court rejected that contention and stated:

> Without question, the home is accorded the full range of Fourth Amendment protections. See *Amos* v. *United States*, 255 U.S. 313 (1921); *Harris* v. *United States*, 331 U.S. 145, 151, n.15 (1947). But when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant. [385 U.S. at pg. 211]

Thus, under the facts of the *Lewis* case the protection of the Fourth Amendment was held to have been forfeited by the defendant.

Certainly the principle behind the *Lewis* decision is broad enough to apply here. We have found it thus applied in one other jurisdiction. In the case of *Patterson* v. *People*, 451 P. 2d 445 (Colo. 1969), there was a seizure of stolen goods by an undercover sheriff's officer who was present in the home of the defendant under the guise of being a prospective purchaser of the stolen goods. The Colorado Supreme Court cited the *Lewis* case and the language quoted above for the proposition that "when one opens his home to the transaction of business and invites another to come in and trade with him," he loses his right to privacy which would otherwise be protected by the Fourth Amendment. See also, *People* v. *Henry*, 482 P. 2d 357 (Colo. 1971).

With respect to this point, the appellants have cited a number of other cases dealing with search and seizure. For example, they have cited *Coolidge* v. *New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022 (1971), and its progeny for the proposition that a warrantless search may not be conducted absent exigent circumstances, and for the proposition that the "plain view doctrine" does not apply in a case such as this one. They have also cited *Trupiano* v. *United States*, 334 U.S. 699, 68 S. Ct. 1229 (1948), for the point that an arrest incident to which evidence theretofore known to be present at the place of arrest does not authorize a warrantless search and seizure, and the most recent *Payton* v. *New York*, 63 L. Ed. 2d 639 (1980), which dealt with a warrantless entrance into a suspect's home to make a routine felony arrest absent exigent circumstances. We understand the point the appellants seek to make with these citations, and we understand and share the reluctance of the United States Supreme Court to permit searches and seizures in violation of the privacies guaranteed by the Fourth Amendment. It is enough, however, to say here that none of the cases involved the exception created by the *Lewis* case which was based upon an invited entrance for the purpose of a transaction involving contraband, and thus a waiver of Fourth Amendment rights.

We hasten to point out that we do not believe the United States Supreme Court intended in the *Lewis* case to condone just any action which might be taken by law enforcement officials who gain entry by deceit for the purpose of conducting a contraband transaction. Their actions must be reasonable under the circumstances. The opinion in the *Lewis* case states at least one limitation, *i.e.*, that an invited entry does not authorize "a general search for incriminating material." (385 U.S. at 211). We can readily imagine many other limitations, and thus we emphasize each case involving the extension of the *Lewis* doctrine, as by the Colorado Court and here, must depend upon the facts showing reasonableness or unreasonableness of the activities of the police.

## 2. Entrapment.

For the proposition that the appellants have been entrapped, they cite *United States* v. *Twigg*, 588 F. 2d 373 (3rd Cir. 1978), and *United States* v. *Hastings*, 447 F. Supp. 534 (E.D. Ark. 1977). The *Twigg* case is inapplicable because there it was clear that government authorities supplied the suspect the most difficult ingredient to obtain for the manufacture of an illegal drug as well as a large percentage of necessary laboratory equipment, and they even supplied the place in which the laboratory was set up. The conduct of the police was labeled "outrageous" by the court. The same label was applied in the *Hastings* case where a government informant actually stole an item for the purpose of selling it to the defendants who were then charged with purchasing stolen property. In the case before us there has been no such "outrageous" conduct. Rather, this seems to have been a routine undercover operation. The initial inducement to commit the offense charged did not come from government authorities. It is obvious the appellants were well predisposed to obtain and sell marijuana to the officer. Merely affording one an opportunity to do that which he is otherwise ready, willing and able to do is not entrapment. *Spears* v. *State*, 264 Ark. 83, 568 S.W. 2d 492 (1978).

## 3. Evidence obtained by fraud and deceit.

This point is closely related to the first two. Here the

appellants contend their motion to suppress the evidence obtained by fraud and deceit should have been granted. The appellants' basic citation is *Gouled* v. *United States*, 255 U.S. 298, 41 S. Ct. 261 (1921). That case was distinguished by the Supreme Court in the *Lewis* opinion because it involved not only entry by deceit, but a subsequent ransacking of the premises for the purpose of obtaining a particular piece of evidence. Equally distinguishable is the appellants' citation of *Barnato* v. *State*, 88 Nev. 508, 501 P. 2d 643 (1972), in which the opinion dealt with officers who entered premises for an announced purpose completely unrelated to searching for marijuana but then surreptitiously took a leaf, which turned out to be marijuana, without the knowledge or consent of the suspect. Neither of those cases involved an invited entry for the purpose of conducting a transaction involving contraband which was ultimately seized.

The appellants also cite *United States* v. *J. B. Kramer Grocery Co.*, 294 F. Supp. 65 (E.D. Ark. 1969). There, an officer obtained entry by misrepresentation which was also coercive in that he stated to the suspect that he had a right to inspect the premises without a warrant. Also cited are *White* v. *State*, 261 Ark. 23-D, 545 S.W. 2d 641 (1977), where a consent to search was found negated by the suspect's drunkenness and *Gibbs* v. *State*, 259 Ark. 997, 504 S.W. 2d 719 (1974), in which our supreme court dealt with a seizure of allegedly obscene material absent a prior hearing to determine whether it was or was not obscene. In the course of the *Gibbs* opinion, the supreme court referred to the state's contention that the seizure was consensual and said that contention lacked merit because the suspect on the premises did not know that the persons who came in and asked to see the movies in question were police officers.

Neither the *White* case nor the *Gibbs* case involved a taking of such obvious contraband as the marijuana in this case. In *Gibbs*, the opinion does not say how the result would have differed had the suspect known the officers were policemen. That factor was not crucial to the result in that case where the real issue concerned "prior restraint" and the First Amendment requirement of a hearing before seizure to determine if the matter in question is obscene.

### 4. *Entrapment burden of proof.*

The appellants cite several cases holding that the burden of proof should be upon the government to show lack of entrapment. The cases cited, however, deal with that burden as it is assigned in the federal courts. In this jurisdiction, entrapment is an affirmative defense, and the court was correct in instructing the jury that the appellants had the burden of proof on this issue. See, *Ark. Stat. Ann.*, § 41-209(1) (Repl. 1977), and *Ark. Stat. Ann.*, § 41-110(4) (Repl. 1977), and *Spears* v. *State, supra.*

### 5. *Sentencing instruction.*

The appellants argue they were entitled to an instruction to the effect that the jury could find them guilty and give them no fine or imprisonment. The argument is that because *Ark. Stat. Ann.*, § 41-803(3) (Repl. 1977), states that a defendant convicted of other than capital murder may be sentenced to a term of imprisonment, a fine or both, and because the fine for a class C felony, in accordance with *Ark. Stat. Ann.*, § 41-1101(1)(b) (Repl. 1977), is "not more than $10,000," the jury could have chosen the fine alternative and rendered a fine of zero dollars. While we applaud the appellants' counsel's originality displayed in this argument, we agree with the appellee that the court, and not the jury, has the power to suspend imposition of sentence. See *Ark. Stat. Ann.*, § 41-803(4) (Repl. 1977). We agree with the appellee that it was correct for the court to refuse to give an instruction which would have had the effect of permitting the jury to do that which is reserved for the court.

### 6. *The amount of marijuana possessed.*

The appellants' final argument is that because the expert who testified at the trial tested less than an ounce of marijuana taken from that which was seized, there was no evidence they possessed more than an ounce, and thus the evidence was insufficient to convict them of possession of more than one ounce of marijuana. The testimony in question came from the appellee's expert who said he took a sam-

ple from each of the 24 bags which had been seized. The net weight of the substance seized was 99 pounds.

Each of the 24 samples weighed approximately one gram. The amount tested was thus less than one ounce. the testimony of the expert was that in his opinion each of the bags contained marijuana. To say that there was no evidence that more than an ounce of marijuana was present would require us to assume the expert, in taking a "sample" from each bag was somehow able to obtain virtually all of the marijuana in each and that the remainder of the 99 pounds was some other substance. Such an assumption would be, to say the least, unreasonable.

Affirmed.