STATE OF NORTH CAROLINA v. BRUCE GILBERT HAGEMAN

No. 206A82

(Filed 3 November 1982)

1. **Criminal Law § 150— misdemeanor and felony cases—unanimous Court of Appeals decision in misdemeanor case—dissent in felony case—no right to appeal misdemeanor case to Supreme Court**

   Where misdemeanor and felony charges were consolidated for trial in the superior court, separate verdicts were returned and separate judgments were entered, the cases were joined together in an appeal to the Court of Appeals, the Court of Appeals rendered a unanimous decision in the misdemeanor case, and there was a dissent in the Court of Appeals in the felony case, defendant was not entitled to appeal the misdemeanor case to the Supreme Court as a matter of right under G.S. 7A-30(2).

2. **Criminal Law § 4— attempt to commit felony—misdemeanor**

   Absent statutory provisions to the contrary, an attempt to commit a felony is a misdemeanor. The portion of the holding in *State v. Parker*, 224 N.C. 524 (1944) which, without qualification, makes an attempt to commit a felony punishable as a felony is erroneous and is no longer authoritative.

3. **Criminal Law § 4; Receiving Stolen Goods § 1.2— attempt to receive stolen goods—misdemeanor**

   An attempt to receive stolen goods is not punishable as a felony pursuant to G.S. 14-3(b) but is punishable only as a misdemeanor.

4. **Receiving Stolen Goods § 1.1— recovered goods not stolen goods**

   When stolen property is recovered, it loses its character or status as stolen property. Therefore, when the police recovered stolen silver flatware prior to its delivery to defendant, it lost its status or character as stolen property, and defendant could not be convicted of receiving stolen goods in connection with the silver flatware. However, a ring which one of the thieves offered to surrender to the police but which the police never actually recovered did not lose its character or status as stolen property.

1

5. **Criminal Law § 4; Receiving Stolen Goods § 1.2— recovered stolen property—conviction of attempt to receive stolen property**

When a defendant has the specific intent to commit a crime and under the circumstances as he reasonably saw them did the acts necessary to consummate the substantive offense, but, because of facts unknown to him essential elements of the substantive offense were lacking, he may be convicted of an attempt to commit the crime. Therefore, defendant could be convicted of an attempt to receive stolen property although the property in question had been recovered by the police and had lost its status as stolen property before it was delivered to defendant.

6. **Receiving Stolen Goods § 6— attempt to receive stolen goods—instructions on criminal intent**

The trial court's instructions adequately stated the law pertinent to an attempt to receive stolen property, including the requirement that the jury find criminal intent in order to convict, and correctly applied the facts to that law.

7. **Receiving Stolen Goods § 1.2— elements of attempted receipt of stolen property**

The elements which must be proven to support a conviction for attempted receipt of stolen property are: (1) guilty knowledge or a reasonable belief that the property was stolen at the time received; and (2) the commission of some overt act with the intent to commit the major offense.

8. **Receiving Stolen Goods § 5.1— attempted receipt of stolen goods—sufficiency of evidence**

In a prosecution for attempted receiving of a stolen ring and stolen silverware, the State's evidence was sufficient to permit the jury reasonably to infer that defendant had guilty knowledge or a reasonable belief that the ring and silverware which he purchased were stolen property and that he received the property with a dishonest purpose where it tended to show that the thief told defendant that he had lost the ring he offered for sale along with other property when he was "getting away" and that he later retrieved the ring; the thief assured defendant that there would be no identifying marks on the ring and told defendant that he had used a false name in their dealings; the thief flatly told defendant that the silverware was "hot" and that it was not initialed; at the time of the silverware transaction, defendant expressed his fears concerning the police; after purchasing the ring, defendant sold it having knowledge or reason to believe it was stolen; and after defendant purchased the silverware, he answered negatively when he was specifically asked by a police officer if he had purchased any silver that day.

9. **Criminal Law § 169.7; Receiving Stolen Goods § 4— exclusion of evidence—subsequent admission of similar evidence**

Even if the trial court in a prosecution for attempted receipt of stolen property improperly excluded testimony by defendant (1) that customers came into his metal purchasing business and jokingly told him that they had stolen property to sell to him, which was offered to negative guilty knowledge, and (2) that he received telephone calls threatening his and his family's life, which was offered to corroborate his testimony that he feared the seller of the stolen

**State v. Hageman**

property posed a threat to him and his family, any possible prejudice to defendant was cured by the court's subsequent admission of substantially the same testimony.

**10. Criminal Law § 112.4— circumstantial evidence relating to intent—instruction on circumstantial evidence not required**

Where there is direct evidence of other elements of the crime, it is not necessary to give an instruction on circumstantial evidence when it relates to intent even if the only evidence of criminal intent is circumstantial.

**11. Criminal Law §§ 85.1, 117— acts of good conduct—inadmissibility to negate motive, intent, knowledge or criminal plan**

The trial court did not err in refusing to give the jury an instruction which would have permitted the jury to consider specific acts as relevant to negate motive, intent, knowledge and criminal plan, since permitting defendants to introduce specific acts of "good conduct" under the guise of negating motive, intent, knowledge or criminal plan would amount to an erosion of the established rule that good character may not be shown by specific acts.

**12. Criminal Law § 121— instructions on entrapment—failure to use the word "predisposed"**

In a prosecution for attempted receipt of stolen property, the trial court's instruction on entrapment that it must appear that an agent of law enforcement officers "used persuasion or trickery to cause the defendant (to attempt) to receive stolen goods, which he was not otherwise willing to do" adequately conveyed the import of the defense of entrapment without the use of the word "predisposed" since there was no significant difference between the word "willing" used by the trial court and the word "predisposed."

**13. Criminal Law § 7— evidence of entrapment—no shifting of burden of proof**

Defendant has the burden to prove the defense of entrapment to the satisfaction of the jury, and once defendant has presented evidence of entrapment, the burden does not then shift to the prosecution to prove predisposition beyond a reasonable doubt.

**14. Criminal Law § 7— defense of entrapment—when available**

The defense of entrapment is available when there are acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime and when the origin of the criminal intent lies with the law enforcement agencies.

**15. Criminal Law § 7— sale of stolen property to defendant by police agent—no entrapment as matter of law**

In this prosecution for attempted receipt of stolen property, the evidence did not disclose that the actions of police officers and their agent amounted to entrapment as a matter of law but permitted an inference by the jury that defendant was ready and willing to enter the illegal transactions when merely afforded the opportunity to do so where it tended to show: officers had reasonable grounds to believe that defendant was receiving stolen property on the basis of statements made by an arrested thief; the police made an agree-

ment with the thief to recommend a lesser sentence in exchange for his agreement to wear a microphone and transmitter into defendant's place of business and to offer to sell a stolen ring and stolen silverware to defendant; defendant purchased the ring after the thief told him that he had been involved in stealing property and that he had lost the ring while attempting to "get away" but was able to go back and find it; the thief told defendant that he did not want to sign his real name on the form which was provided to him when defendant bought the ring; after receiving this damaging information, defendant proceeded to purchase and resell the ring; later, when the thief returned with the silverware, he told defendant that the silverware was stolen and defendant proceeded to buy it; defendant then called on the police "hotline" and asked what had been reported as stolen; he was furnished a list of items and was told that there was a report of stolen silverware; an officer asked defendant if he had bought any silver flatware that day, and defendant replied in the negative; and defendant testified that he bought the stolen items because he was afraid for his own safety.

APPEAL by defendant pursuant to G.S. 7A-30(2) from decision of the Court of Appeals (reported in 56 N.C. App. 274, 289 S.E. 2d 89 (1982)), finding no error in part, and error in part, in judgments entered by *Mills, J.*, at the 30 March 1981 Session of FORSYTH Superior Court.

Defendant was charged in case number 80CR51100 with the misdemeanor offense of receiving stolen property, a jade ring. After conviction and judgment in District Court, he appealed to Superior Court where the misdemeanor case was consolidated for trial with an indictment in case number 80CR52198 charging defendant with the felony of receiving stolen property, namely sterling silver flatware. The offenses allegedly occurred on 18 December 1980.

Evidence presented by the State tended to show:

On 18 December 1980, defendant was the operator of an outlet of the Metal Mart, a company established to purchase scrap gold and silver from various sellers, including the public. On 5 December 1980, Tyrone Oliver and Stephon Johnson broke into the home of Ms. Prince in Winston-Salem and stole certain silverware, rings, jewelry, and watches. Johnson testified that he took a watch, several rings, and some coins taken from the Prince home to the Metal Mart in Winston-Salem and sold them to defendant for $61. On 6 December, Johnson and Oliver were arrested when they attempted to sell some of the stolen property in Greensboro. Johnson returned to defendant's outlet and asked

defendant if he would loan him money to arrange for Oliver's bail. Defendant refused this request.

Johnson's preliminary hearing was scheduled for 17 December 1980. Between Johnson's arrest and hearing, the Winston-Salem police took possession of the silver taken from Ms. Prince's home. Johnson's girlfriend had possession of a ring stolen from that home. Johnson testified that he obtained the ring from his girlfriend and offered to surrender it to the police. The police refused to accept the ring but made an agreement with Johnson to recommend a lesser sentence in exchange for his agreeing to wear a microphone and transmitter into the Metal Mart offering to sell the stolen silverware and ring to defendant.

Pursuant to this arrangement, Johnson went into the Metal Mart and discussed the proposed sale with defendant. Johnson first entered the Mart with the ring and sold it to defendant for ten dollars. While he was in the Mart, Johnson made several statements about the stolen silverware, telling defendant that he would return with it. On the same day, Johnson returned and sold the silver to defendant. Shortly thereafter, the police entered the Mart and arrested defendant. A detailed account of a recorded conversation between defendant and Johnson is hereinafter set forth in the opinion.

Defendant's evidence tended to show that he possessed a reputation for good character in his community. Defendant testified that he did not recall Johnson's telling him the jade ring was stolen and that initially he did not believe Johnson's statement that the silverware was "hot." After he purchased the silverware, defendant called the "hot line," a police telephone number which connected defendant's place of business with the police department, established to help precious metals dealers determine whether property was stolen. Defendant asked Officer Reaves, who was operating the line, to identify items reported stolen within the preceding twelve to twenty-four hours. The list Officer Reaves read to defendant had no information concerning the watch, the ring or the silver flatware defendant had purchased. Defendant requested that Reaves call him to give details regarding other items Reaves mentioned as having been reported stolen. Defendant did not specifically mention the ring or silver he had purchased.

In case number 80CR51100, the jury found defendant guilty of attempted nonfelonious receiving of stolen property, the ring; and in case number 80CR52198, it found him guilty of attempted felonious receiving of stolen property, the silver. The court entered judgments imposing consecutive prison terms, and defendant appealed.

In case number 80CR51100, attempted receipt of stolen property, the jade ring, the Court of Appeals found no error. In case number 80CR52198, attempted receipt of stolen property, silverware, the Court of Appeals concluded that defendant was guilty of a misdemeanor, vacated the judgment, and remanded the cause to Superior Court for resentencing.

Judge Becton dissented to that part of the Court of Appeals' decision relating to case number 80CR52198, and defendant gave notice of appeal to this Court pursuant to G.S. 7A-30(2).

*Rufus L. Edmisten, Attorney General, by Robert L. Hillman, Assistant Attorney General, for the State.*

*William B. Gibson for defendant-appellant.*

BRANCH, Chief Justice.

[1] Initially, we note a procedural question regarding defendant's right to appeal to this Court. Defendant was charged in two separate cases, one a misdemeanor and the other a felony. After he appealed his misdemeanor conviction to the Superior Court, the cases were consolidated for trial. Nevertheless, they remained two separate cases in which separate verdicts were returned and separate judgments were entered.

The Court of Appeals treated the cases separately. In a unanimous decision, it found no error in the original misdemeanor case, number 80CR51100. It was in case number 80CR52198 that Judge Becton dissented.

G.S. 7A-30 provides for a right of appeal to this Court from a decision of the Court of Appeals "rendered in a *case* . . . in which there is a dissent." (Emphasis ours.) In *Hendrix v. Alsop*, 278 N.C. 549, 180 S.E. 2d 802 (1971), this Court, after reviewing the legislative history of G.S. 7A-30(2) held that:

It is apparent . . . the General Assembly of North Carolina intended to insure a review by the Supreme Court of questions on which there was a division in the intermediate appellate court; no such review was intended for claims joined or consolidated in the lower appellate court and on which that court rendered unanimous decision.

278 N.C. at 554, 180 S.E. 2d at 806.

Although *Hendrix* was a civil case, we hold that the same rule applies to a criminal case. *See, State v. Campbell,* 282 N.C. 125, 191 S.E. 2d 752 (1972).

We conclude that defendant did not have the right to appeal to this Court in case number 80CR51100. However, since the principal question presented in the case in which Judge Becton dissented might also apply to the other case, we elect to treat the attempted appeal in the misdemeanor case as a petition for discretionary review and allow the petition.

The first question presented by this appeal is whether attempted receiving stolen property can be a felony.

In case number 80CR52198, receiving stolen property, sterling silver flatware, the trial judge submitted possible verdicts of attempted felonious receipt of stolen goods or attempted nonfelonious receipt of stolen goods. The jury returned a verdict of guilty of attempted felonious receiving stolen property.

G.S. 14-3 provides:

(a) Except as provided in subsection (b), every person who shall be convicted of any misdemeanor for which no specific punishment is prescribed by statute shall be punishable by fine, by imprisonment for a term not exceeding two years, or by both, in the discretion of the court.

(b) If a misdemeanor offense as to which no specific punishment is prescribed be infamous, done in secrecy and malice, or with deceit and intent to defraud, the offender shall, except where the offense is a conspiracy to commit a misdemeanor, be guilty of a Class H. felony.

In vacating that part of the trial court's judgment punishing defendant as a felon, the Court of Appeals held that an attempt to

receive stolen goods was not within the purview of G.S. 14-3(b). We agree.

[2]  It is well established in this State that absent statutory provisions to the contrary, an attempt to commit a felony is a misdemeanor. *State v. Hare*, 243 N.C. 262, 90 S.E. 2d 550 (1955); *State v. Spivey*, 213 N.C. 45, 195 S.E. 1 (1938); *State v. Stephens*, 170 N.C. 745, 87 S.E. 131 (1915); *State v. Jordan*, 75 N.C. 27 (1876). In *State v. Parker*, 224 N.C. 524, 31 S.E. 2d 531 (1944), defendants were convicted of the offense of "an attempt to feloniously receive stolen property knowing it to be stolen." This Court finding no error stated:

> An unlawful attempt to feloniously receive stolen property, knowing it to have been stolen, is composed of two essential elements: (1) guilty knowledge at the time that the property had been stolen, and (2) the commission of some overt act with the intent to commit the major offense. (Citations omitted.)

224 N.C. at 525, 31 S.E. 2d at 531.

The opinion in *Parker* did not consider the now well-established rule that absent statutory provisions to the contrary, attempt to commit a felony is a misdemeanor. *State v. Hare*, *supra*; *State v. Spivey*, *supra*; *State v. Stephens*, *supra*; *State v. Jordan*, *supra*.

We, therefore, are of the opinion that the portion of the holding in *Parker* which, without qualification, makes an attempt to commit a felony punishable as a felony is erroneous and is no longer authoritative.

We further note that this Court has held that attempted burglary, *State v. Surles*, 230 N.C. 272, 52 S.E. 2d 880 (1949), attempted common law robbery, *State v. McNeely*, 244 N.C. 737, 94 S.E. 2d 853 (1956), attempted armed robbery, *State v. Parker*, 262 N.C. 679, 138 S.E. 2d 496 (1964), and an attempt to commit a crime against nature, *State v. Spivey*, *supra*; *State v. Mintz*, 242 N.C. 761, 89 S.E. 2d 463 (1955); *State v. Harward*, 264 N.C. 746, 142 S.E. 2d 691 (1965), all constitute misdemeanors which are infamous, done in secret and malice or with deceit and intent to defraud, and are punishable as felonies under G.S. 14-3(b). Also, the Court of Appeals has held that an attempt to obtain property

by false pretenses is a crime done with deceit and intent to defraud, squarely within the purview of G.S. 14-3(b). *State v. Page,* 32 N.C. App. 478, 232 S.E. 2d 460, *disc. review denied,* 292 N.C. 643, 235 S.E. 2d 64 (1977).

[3] We have not specifically considered whether attempted receipt of stolen property falls within the class of misdemeanors punishable under G.S. 14-3(b). We now turn to that question. In our analysis of this issue, we must bear in mind the general rule of statutory construction that criminal statutes are to be strictly construed against the State. *State v. Ross,* 272 N.C. 67, 157 S.E. 2d 712 (1967); *State v. Brown,* 264 N.C. 191, 141 S.E. 2d 311 (1965); *State v. Jordon,* 227 N.C. 579, 42 S.E. 2d 674 (1947). This Court held in *State v. Surles, supra,* that an attempted burglary was infamous because it was an act of depravity, involving moral turpitude, revealing a heart devoid of social duties and a mind fatally bent on mischief. The Court reasoned that in light of the statute which made infamous misdemeanors punishable as felonies, the meaning of infamous must be determined with reference to the degrading nature of the offense and not the measure of punishment.

We also agree with that part of the dissent in *Surles* where Justice Ervin wrote:

When the Legislature used the words "done in secrecy and malice, or with deceit and intent to defraud," to describe the second and third classes of aggravated offenses included in the statute now codified as G.S. 14-3, its manifest purpose was to describe offenses in which either secrecy and malice, or the employment of deceit with intent to defraud are elements necessary to their criminality as defined by law.

230 N.C. at 284, 52 S.E. 2d at 888 (1949). (Ervin, J., dissenting.) We do not perceive that attempting to receive stolen property is a crime of the same degree as attempted robbery, attempted burglary and an attempt to commit a crime against nature. Nor does the crime of attempted receipt of stolen property include secrecy, malice, deceit or intent to defraud as necessary elements.

In *State v. Grant,* 261 N.C. 652, 135 S.E. 2d 666 (1964), we held that an attempt to break and enter was a misdemeanor punishable under G.S. 14-3(a). Certainly the crime of attempted

breaking and entering would more readily support a finding that it was an infamous misdemeanor than would the offense of attempting to receive stolen property. Therefore, relying on *Grant*, we hold that the Court of Appeals acted properly in vacating the trial judge's judgment sentencing defendant as a felon in case number 80CR52198 and remanding the case to the Superior Court of Forsyth County for punishment pursuant to G.S. 14-3(a).

By his fifth, sixth, seventh, and eighth assignments of error, defendant contends that once stolen goods have been recovered by the police, they lose their character as stolen property. Thereafter, it becomes impossible for a person to commit the crime of receiving stolen goods or attempting to receive stolen goods. He argues that in the case before us, the silver had been recovered by the police before it was purchased by defendant; that the ring had been constructively recovered by the police when Johnson offered it to them; and that since Johnson acted as their agent, the police were in constructive possession of the ring.

We first consider whether the stolen property lost its stolen character when it was recovered by the police prior to its delivery to defendant. Our research discloses no North Carolina authority decisive of the questions here presented, and we, therefore, turn to other jurisdictions of the United States for enlightenment.

The weight of authority is that once stolen property is recovered, it loses its status as stolen property. In considering a situation similar to the one before us, the court in *United States v. Cohen*, 274 F. 596 (3rd Cir. 1921), stated:

> When the actual, physical possession of stolen property has been recovered by the owner or his agent, its character as stolen property is lost and the subsequent delivery of the property by the owner or agent to a particeps criminis, for the purpose of entrapping him as the receiver of stolen goods, does not establish the crime, for in a legal sense he does not receive stolen property.

274 F. at 599. *Accord, United States v. Monasterski,* 567 F. 2d 677 (6th Cir. 1977); *United States v. Dove,* 629 F. 2d 325 (4th Cir. 1980); *Felker v. State,* 254 Ark. 185, 492 S.W. 2d 442 (1973); *Bandy v. State,* 575 S.W. 2d 278 (Tenn. 1979); *Booth v. State,* 398 P. 2d

863 (Okl. Cr. 1964); *State v. Vitale*, 23 Ariz. App. 37, 530 P. 2d 394 (1975); *State v. Tropiano*, 154 N.J. Super. 452, 381 A. 2d 828 (1977); *Darnell v. State*, 92 Nev. 680, 558 P. 2d 624 (1976); *People v. Rojas*, 55 Cal. 2d 252, 358 P. 2d 921 (1961).

[4] We believe that the *Cohen* rule is sound and, therefore, hold that when stolen property is recovered, it loses its character or status as "stolen property." Thus, when the Winston-Salem police recovered the silver flatware, it lost its status or character as stolen property.

The ring, however, was not recovered by the police. We agree with the Court of Appeals that it never lost its character or status as stolen property.

[5] There nevertheless remains defendant's contention that since it is legally impossible for him to have committed the crime of receiving stolen property, it is also legally impossible for him to be convicted of an attempt to receive stolen property.

Defendant asks this Court to adopt the rationale of *People v. Jaffe*, 185 N.Y. 497, 78 N.E. 169 (1906). In *Jaffe* stolen property had been recovered by the police. After its recovery, the property was delivered to Jaffe pursuant to a prearranged plan. Jaffe was charged and convicted of attempting to receive stolen property. Noting that the property was not stolen property when it was received by Jaffe, the court reasoned:

> If all which an accused person intends to do would if done constitute no crime it cannot be a crime to attempt to do with the same purpose a part of the thing intended. (1 Bishop's Crim. Law [7th ed.], sec. 747.)

185 N.Y. at 501, 78 N.E. at 170. Jaffe's conviction was overturned.

The New York Court of Appeals attempted to distinguish *Jaffe* from a line of so-called "pickpocket cases." *People v. Moran*, 123 N.Y. 254, 25 N.E. 412 (1890); *State v. Wilson*, 30 Conn. 500 (1862). In those cases, the defendants' convictions for attempted larceny were sustained even though the targeted pockets were devoid of anything which could be the subject of larceny. The court noted that those cases hold that "one may be convicted of an attempt to commit a crime notwithstanding the existence of facts unknown to him which would have rendered the complete

perpetration of the crime itself impossible." 185 N.Y. at 499, 78 N.E. at 169.

It is true that there is a factual difference between *Jaffe* and the "pickpocket" cases in that in the "pickpocket" cases it was factually impossible to commit the crime because the targeted pockets were empty. In *Jaffe* the court relied upon the theory of legal impossibility, the theory being that since, as a matter of law, the property had lost its status as stolen property there could be no conviction of receiving stolen property or attempting to receive stolen property. The *Jaffe* rule and the so-called "pickpocket" cases are not distinguishable. The reasoning and results of the respective courts are simply in direct conflict. Had the facts permitted the application of either of the impossibility rules, it is evident that the reasoning of the courts would have dictated the same contrary results. On this question of first impression in this jurisdiction, we must adopt the rationale of one of these lines of cases and reject the other.

The specific question before this Court was addressed by the California Supreme Court in *People v. Rojas, supra.* In *Rojas,* stolen property recovered by the police was sold to Rojas according to a prearranged plan. The court held that the property lost its status as stolen property which precluded a finding of guilt for receiving stolen property. Even so, the court held that Rojas could be convicted of attempted receipt of stolen property.

Noting that the *Jaffe* rule had been the subject of criticism, the court refused to apply a legal impossibility analysis or concern itself with the fine distinction between legal and factual impossibility; instead, the court considered the controlling factor to be the specific intent of the actor to commit a substantive offense. In reaching its decision, Justice Schauer, speaking for the court, stated:

> Intent is in the mind; it is not the external realities to which intention refers. The fact that defendant was mistaken regarding the external realities did not alter his intention, but simply made it impossible to effectuate it.

> *       *       *

> In the case at bench the criminality of the attempt is not destroyed by the fact that the goods, having been recovered

by the commendably alert and efficient action of the Los Angeles police, had unknown to defendants, lost their "stolen" status. . . . In our opinion the consequences of intent and acts such as those of defendants here should be more serious than pleased amazement that because of the timeliness of the police the projected criminality was not merely detected but also wiped out.

55 Cal. 2d at 257, 258, 358 P. 2d at 924. *Accord, Darnell v. State, supra; State v. Tropiano, supra; Bandy v. State, supra; State v. Vitale, supra; State v. Carner,* 25 Ariz. App. 156, 541 P. 2d 947 (1975). *See also, State v. Rios,* 409 So. 2d 241 (Fla. App. 1982), where it was held that the defendant could be convicted of attempted receipt of stolen property even though the property involved *never* had been stolen.

We reject the *Jaffe* rule. To adopt this rule would be to provide a technical escape mechanism for one charged with an attempt to commit a crime who had clearly demonstrated his criminal intent and who has taken all steps to complete the crime. We do not believe that either legal or factual impossibility should be used as a shield in such cases.

We agree with the reasoning of *Rojas* and its progeny. Accordingly, we hold that when a defendant has the specific intent to commit a crime and under the circumstances as he reasonably saw them did the acts necessary to consummate the substantive offense, but, because of facts unknown to him essential elements of the substantive offense were lacking, he may be convicted of an attempt to commit the crime. Here defendant was charged with two counts of receiving stolen property. Under these indictments, defendant could be convicted of attempted receipt of stolen property. *State v. Parker, supra;* G.S. 15-170. Defendant was properly convicted in case number 80CR52198 inasmuch as the fact that the silver flatware had lost its character or status as "stolen property" does not preclude a conviction for attempted receipt of stolen property. Defendant was properly convicted in case number 80CR51100 of attempted receipt of stolen property since the ring never lost its character or status as "stolen property."

**[6]** By his 11th assignment of error, defendant avers that the trial judge erred in failing to properly instruct the jury on the

crime of attempt to receive stolen property. He argues that the instruction given did not require the jury to consider his contention that evidence of criminal intent was lacking.

In order for the State to prove that defendant attempted to receive stolen property, it is necessary to establish two elements: (1) guilty knowledge or a reasonable belief that the property was stolen at the time received; and (2) the commission of some overt act with the intent to commit the major offense. *State v. Parker,*[1] *supra.*

In this case, Judge Mills instructed the jury as follows:

Members of the jury, I charge that for you to find the defendant guilty of an attempt to feloniously receive stolen goods, the State must prove five things beyond a reasonable doubt. First, that a quantity of sterling silver flatware, marked State's Exhibit No. 2 had been stolen by someone other than the defendant, Bruce Hageman. Second, that this property had been stolen following a breaking or entering. Breaking or entering is the breaking into another's building without his consent. Third, that the State must prove that the defendant received the property, that is received the silver flatware. Fourth, that the defendant received this property with a dishonest purpose. The intent to permanently deprive the — permanently depriving the owner of his property is a dishonest purpose. A person acts intentionally for purposes of this crime when it is his intent to permanently deprive the owner of his property and convert it to his own use. Intent is a mental attitude seldom provable by direct

---

1. In our discussion of whether the attempted receipt of stolen property constituted a crime punishable as a felony under G.S. 14-3(b), we overruled that part of *Parker* which seems to stand for the proposition that a person could be convicted of a felonious attempt to receive stolen property. We do believe, however, that *Parker* stated the proper rule as to the elements of attempted receipt of stolen property. We modify the elements which were given by that court, (1) guilty knowledge at the time that the property had been stolen; and (2) the commission of some overt act with the intent to commit the major offense, to include a reasonable belief, at the time the property was received, that the property was stolen. This conforms with the 1975 amendment to G.S. 14-71 which permits a conviction for receiving stolen property when the State proves that the defendant had a reasonable belief that property was stolen at the time he received it. Under the prior law, the State had to prove actual or implied knowledge. A reasonable belief was insufficient. *State v. Burchfield,* 30 N.C. App. 128, 226 S.E. 2d 384 (1976); *State v. Miller,* 212 N.C. 361, 193 S.E. 388 (1937).

evidence. It must ordinarily be proved by circumstances from which it may be inferred. An intent to permanently deprive another of property may be inferred from the conduct of the defendant and other relevant circumstances. And fifth, that the defendant at the time he received this property knew or had reasonable grounds to believe it was stolen following a breaking or entering.

In the other case, members of the jury, the defendant has also been charged with attempted nonfelonious receiving stolen goods. Now, I charge for you to find the defendant guilty of attempted nonfelonious receiving stolen goods, in this case the State must prove four things beyond a reasonable doubt. First, that one gold ring was stolen by someone other than the defendant. Now, stealing is also called larceny, and it's defined as follows: It is the taking and carrying away of the personal property of another without his consent intending at that time to deprive him of its use permanently, knowing that he was not entitled to take it. Second, that the defendant received that property. Third, that the defendant at the time he received that property knew or had reasonable grounds to believe it had been stolen. And fourth, that the defendant received that property with a dishonest purpose. Permanently depriving the owner of his property is a dishonest purpose.

The trial judge's instructions contained all of the elements of an attempt to receive stolen property including the requirement that the jury must find criminal intent in order to convict.

We hold that the instructions given adequately stated the law pertinent to an attempt to receive stolen property and correctly applied the facts to that law.

Defendant assigns as error the trial judge's denial of his motions for dismissal, nonsuit and to set aside the verdict as being against the greater weight of the evidence.

The essence of the familiar rule governing the judge's consideration of the evidence upon motion for judgment as of nonsuit is that the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference which may be drawn from the evidence ad-

mitted, whether it be competent or incompetent. *State v. Lee*, 294 N.C. 299, 240 S.E. 2d 449 (1978); *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975).

[7]   As hereinabove stated, the elements which must be proven to support a conviction for attempted receipt of stolen property are: (1) guilty knowledge, or a reasonable belief, at the time the property was received that the property was stolen, and (2) the commission of some overt act with the intent to commit the major offense. *State v. Parker, supra.*

[8]   The State's most telling evidence on the question of defendant's guilt was the testimony of Stephon Johnson and the tape recording of his conversation with the defendant which illustrated and corroborated his testimony. We quote pertinent parts of this conversation:

MR. JOHNSON: Hey man, what 'cha been up to?

MR. HAGEMAN: Not much, how about you? Sticking in there?

MR. JOHNSON: Well, I'll let you know. Check it out man, I got a ring, man, it ain't got no kind of identification. I mean, no kind of signs on it. One that you know, I went back and found that one. I lost a lot of stuff man, when I was trying to get away, you know.

MR. HAGEMAN: Okay.

MR. JOHNSON: But that was still there. I got some silver if you want it, man.

MR. HAGEMAN: Yeah, we need, you know, anything silver or anything. This is 10 carat gold.

MR. JOHNSON: Right, how much can I get for it?

MR. HAGEMAN: Okay, see we have to pop the stone out in order to give you the gold price.

MR. JOHNSON: All right. How you been doing?

MR. HAGEMAN: Hanging in there. Believe it or not, I'm probably the same place you are. I've got to hustle and come up with some money. Spend most of my time hustling.

MR. JOHNSON: Right. Well, I've got some silver, man, but I just don't want the police bothering me, you know how they is.

MR. HAGEMAN: Oh, sure.

MR. JOHNSON: Yeah, it's hot.

MR. HAGEMAN: Man, I don't know, I'd rather not.

MR. JOHNSON: Check it out, check it out. I mean it's marked sterling, it ain't got nobody's initials on it.

MR. HAGEMAN: Yeah, but still man, the police are sly people, man I—

MR. JOHNSON: They won't know nothing, man, they won't know nothing.

MR. HAGEMAN: Didn't you sell some pocket watches?

MR. JOHNSON: Yeah.

MR. HAGEMAN: They caught a friend?

MR. JOHNSON: They did, they caught a friend, they still got him, they got him in Greensboro.

MR. HAGEMAN: He hasn't fessed up to it or anything?

MR. JOHNSON: He hasn't fessed up to it. Naw, man, he said he wouldn't say nothing. He ain't going to say nothing no way. They didn't catch us with the stuff on us. So once you get a lawyer—my mother came down there and got me out of it, a $12,000 bond so I can get everything fixed. So once we get a lawyer, man, we're scot-free.

MR. HAGEMAN: How much does a $12,000 bond cost?

MR. JOHNSON: $1,800.

MR. HAGEMAN: $1,800?

MR. JOHNSON: And if you get a lawyer, then we're scot-free cause they didn't catch us with nothing on us. How much is that worth?

MR. HAGEMAN: Okay, okay, it's not worth a whole lot, it's not real heavy. Let's see.

MR. JOHNSON: I've been doing all right for the last—soon as I got out of jail, man, but I got to go to court next week, cause my lawyer says as long as they didn't catch us with nothing, we're scot-free.

MR. HAGEMAN: Right.

MR. JOHNSON: So we're scot-free.

MR. HAGEMAN: Right, well, that's good, that's good, man. It's not worth the hassle, I mean I hope for you you don't ever get caught.

MR. JOHNSON: Hey, I'm going to be all right, you know, I'll be all right, you know, I'm gonna still—Winston-Salem.

MR. HAGEMAN: You're all right, you're okay. Well, all right, you've got $10.00.

MR. JOHNSON: Look, I give you a false name this time, you gotta—

MR. HAGEMAN: Don't tell me that.

MR. JOHNSON: Okay, okay, how much is that?

MR. HAGEMAN: That'll give you 10, 10 bucks.

MR. JOHNSON: Okay.

MR. HAGEMAN: It's lightweight, here feel it. You'll understand that.

MR. JOHNSON: Yeah, I can understand that. But I'm gonna bring the silver back, is that all right?

MR. HAGEMAN: Well—

MR. JOHNSON: They ain't gonna catch up with that silver, man.

MR. HAGEMAN: I don't know, it's—I just feel funny.

MR. JOHNSON: Hey, you can get rid of it, right?

MR. HAGEMAN: You got a friend, don't ya? Send him on in.

MR. JOHNSON: All right if I can find him.

MR. HAGEMAN: Okay, I need your signature and your social security—

State v. Hageman

MR. JOHNSON: All right. It's Christmas, man, I ain't got my mom nothing for Christmas yet, you know.

MR. HAGEMAN: I know. I know. There's $10.00 and your receipt.

MR. JOHNSON: If I can't find him, I'll come back myself, okay?

MR. HAGEMAN: Okay.

\* \* \*

MR. HAGEMAN: What you got?

MR. JOHNSON: I got some silver.

MR. HAGEMAN: Okay, let me weigh it up.

MR. JOHNSON: This be where I broke in the house and took it.

MR. HAGEMAN: Oh, don't tell me nothing.

MR. JOHNSON: Okay, so this is where I broke in a house so you gotta watch out, right?

MR. HAGEMAN: Right.

MR. JOHNSON: Okay, I gotta another box. I got a friend who will be up here in about one hour on the dot with the box of it, you know.

MR. HAGEMAN: Right. This stuff isn't marked sterling.

MR. JOHNSON: Well, ya know, test it out, test it out, put a test on it, test it.

MR. HAGEMAN: Okay, I'll test it.

MR. JOHNSON: When I broke in the house, there's some that I hid. I got another box. I gotta a friend gonna bring it. I can get another friend to bring it a little bit more at a time if you want it that way. I just gotta make sure it cools down. All of it's silver, man. I sold some to your man up there yesterday.

MR. HAGEMAN: Where? Here?

MR. JOHNSON: Right up there. You're not the only person I know.

MR. HAGEMAN: Yeah.

MR. JOHNSON: I know a whole lot of um, you know. All of it's silver, man.

MR. HAGEMAN: Man, I got a kind of funny feeling now, I don't know.

MR. JOHNSON: You'll be all right, man, you'll be all right.

\* \* \*

MR. JOHNSON: Well, I might could take them probably somewhere else and sell um, that ain't no good, might be try to get over on somebody, go find me a dummy, ya know.

MR. HAGEMAN: Yeah, there's a lot of dummies out there. These here they're no good.

MR. JOHNSON: I'll put these back in the bag. I might take these home and use them. You didn't write my name down last time, did ya?

MR. HAGEMAN: No, we got rid of that ticket.

MR. JOHNSON: All right. You don't know me and I don't know you.

MR. HAGEMAN: Hey, that's it, man, and if you ever come back here and you're caught, I don't know you, understand?

MR. JOHNSON: Right. You ain't gonna call the police on me soon as I leave, are you?

MR. HAGEMAN: No, cause I know too much already.

MR. JOHNSON: On who, me?

MR. HAGEMAN: No, I mean I know too much, in other words, you know, if I buy it I can get—but even if I call the police down here, they'll still say, well, Mr. Hageman, you gave him some money.

MR. JOHNSON: Right, right, so you can't do nothing. They'll get you for buying stolen goods. But they won't know it's stolen, man, just go on and do what you did with the watches, you know the watches and stuff, do them like you did the watches and it will be all right. In about exactly 45 minutes I got a guy coming down here, you want him to bring the

whole box or just a little bit at a time? I can get another guy to come too.

MR. HAGEMAN: Well, I don't want to know who they are, okay?

MR. JOHNSON: You ain't got to know who they are, they just gonna walk in here, show them to you and it's just like me and you, you know?

MR. HAGEMAN: Right.

MR. JOHNSON: Oh, I got—you ain't waiting on no police, are you?

MR. HAGEMAN: No, man, I'm just worried, that's all.

MR. JOHNSON: You all right, you all right cause where I broke in the place, man, the lady dropped the charges and s--t man, and then didn't show up in court yesterday. Know what I mean? She dropped the charges. She didn't need all that back. All she wanted was her insurance, that's all.

MR. HAGEMAN: Hey, I got a lot of friends at the police force and man, if this ever got out.

MR. JOHNSON: They don't know anything, man.

MR. HAGEMAN: That will come to $45.

MR. JOHNSON: All right, all right. Don't call the police on me.

MR. HAGEMAN: That's it.

MR. JOHNSON: Oh, you can't use them neither?

MR. HAGEMAN: You see, this is stainless steel here.

MR. JOHNSON: How much is this?

MR. HAGEMAN: $45. This is a quarter of an ounce here, and this here is—let me show you what I mean.

MR. JOHNSON: $45, but you didn't give me nothing for them?

MR. HAGEMAN: I counted it in as a weight. See this?

MR. JOHNSON: O yeah, yeah, yeah.

MR. HAGEMAN: The same thing with this man, when I break this open, see? But I allowed for weight, okay. Good enough.

I think my wife just pulled up in that blue car across the street. I think we'll go to lunch.

MR. JOHNSON: Okay, you gonna go to lunch, right? Why don't you hold off for about 30 minutes. I'm gonna have another guy down here. You'll be all right, okay. Don't call the police on me. That your wife right there?

MR. HAGEMAN: Right.

Defendant contends that there was no evidence that the ring was stolen or that he received it with a dishonest purpose.

As to the silverware, it is defendant's contention that even though he might have had reasonable grounds to believe it was stolen, he did not receive that property with a dishonest purpose.

Johnson, in substance, told defendant that he had lost the ring he offered for sale along with other property when he was "getting away" and that he later retrieved the ring. He assured defendant that there were no identifying marks on the ring and told defendant that he had used a false name in their dealings. Although defendant testified that he had not known Johnson prior to the time he purchased the ring, his questions of Johnson at that time concerning a previous sale of watches and the in-volvement of a "friend" of Johnson's belies that assertion. Johnson flatly told defendant that the silverware was "hot," and that it was not initialed. At the time of the silverware transac-tion, defendant expressed his fears concerning the police.

The State's evidence also showed that after purchasing the ring, defendant sold it having knowledge, or reason to believe it was stolen. Shortly thereafter defendant bought silver which he knew or had reason to believe was stolen. The evidence showed that after defendant purchased the silver flatware, he was specifically asked by Officer Reaves if he had purchased any silver that day. defendant answered in the negative.

We hold that there was ample evidence offered to permit the jury to reasonably infer that defendant had guilty knowledge or a reasonable belief that the ring and silverware which he purchased were stolen property, and that he received the property with a dishonest purpose.

The trial court properly overruled defendant's motions for dismissal and nonsuit.

Neither do we find any merit in defendant's argument that the trial judge erred in denying his motion to set aside the verdict. This motion was directed to the sound discretion of the trial judge. *State v. Boykin,* 298 N.C. 687, 259 S.E. 2d 883 (1979), *cert. denied,* 446 U.S. 911, 100 S.Ct. 1841, 64 L.Ed. 2d 264 (1980). No abuse of discretion is shown.

[9] Defendant next argues that the trial judge erroneously excluded testimony (1) that customers came into the Metal Mart and jokingly told him that they had stolen property to sell him, and (2) that he received telephone calls threatening his and his family's life. The first evidence was offered to negate guilty knowledge, and the evidence relating to telephone calls was offered to corroborate his testimony that he feared that Johnson posed a threat to him and his family.

Subsequent to the offer of this excluded evidence, defendant was permitted to testify as follows:

> He mentioned again that it was hot and to gain his confidence I said I don't want to hear it. At this point I was suspicious but confused. How could a man admit that it was stolen. I frequently have heard customers say this and due to newspaper stories, it is a common remark to make. . . . I get drunks, potheads, stock brokers, clergy, et cetera all kidding that they stole stuff, et cetera, because of all the fuss in the papers.
>
> \*    \*    \*
>
> I felt there was a chance that he may not have had stolen goods but he was playing around with my life. I couldn't see any weapon. He had a coat on. He had not threatened me with a weapon, not at that point, but he might have threatened me with telephone calls earlier.
>
> \*    \*    \*
>
> I said, "Man, I got kind of a funny feeling, I don't know." I still didn't call the police, didn't say "Wait here, I'll be back in a minute" and go back there and call them. I felt my life

was in danger, and my family's. I didn't know if he had a gun. He had a coat on.

It is well settled in this jurisdiction that no prejudice arises from the erroneous exclusion of evidence when the same or substantially the same testimony is subsequently admitted into evidence. *State v. Matthews*, 299 N.C. 284, 261 S.E. 2d 872 (1980); *State v. King*, 225 N.C. 236, 34 S.E. 2d 3 (1945). Here it is obvious that the testimony subsequently admitted into evidence was substantially the same as that excluded and which is the subject of this assignment of error. Assuming, *arguendo*, that the evidence was improperly excluded, any possible prejudice to defendant was cured by the subsequent admission of substantially the same testimony.

[10] Defendant assigns as error the denial of his request that the court instruct the jury on circumstantial evidence.

The law in this State is that the trial court is not required to instruct the jury on the law of circumstantial evidence in a criminal action involving direct and circumstantial evidence if the State primarily relies on direct evidence, and if the direct evidence is sufficient to warrant the conviction of the accused. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Bennett*, 237 N.C. 749, 76 S.E. 2d 42 (1953); *State v. Hicks*, 229 N.C. 345, 49 S.E. 2d 639 (1948).

In the cases cited above, the circumstantial evidence related to the *corpus delicti* and the identity of the accused, and not criminal intent, and in *Covington* and *Bennett*, there was no specific request for the instruction. However, the general rule in other jurisdictions is that where there is direct evidence of other elements of the crime, it is not necessary to give an instruction on circumstantial evidence when it relates to intent. This is so even if the only evidence of criminal intent is circumstantial. *State v. Lapoint*, 87 Vt. 115, 88 A. 523 (1913); *State v. Moehlis*, 250 N.W. 2d 42 (Iowa 1977); *Phillips v. State*, 604 S.W. 2d 904 (Tex. Crim. App. 1979); *Brown v. State*, 233 A. 2d 445 (Del. 1967); *People v. Schoeneck*, 42 Ill. App. 3d 711, 356 N.E. 2d 417 (1976); 23A C.J.S., *Criminal Law* § 1250 (1961); 75 Am. Jur. 2d, *Trials*, § 845 (1974).

[11] Defendant also contends that the trial court erred by denying his request to instruct as follows:

Evidence has been received tending to show that the defendant had on several occasions in the conduct of his business helped the police recover stolen merchandise and in some cases arrest the thieves, as in the incident involving M. G. Burke's ring. Defendant also has offered evidence that he became a public figure in the debate over the ordinance regulating the conduct of precious metals deals, to include speaking out at the meeting of the Public Safety Committee of the Board of Aldermen and responding to inquiries by members of the local newspaper and broadcast media. Defendant has further testified that during this debate he proposed that the telephone hot line be set up, and that his proposal was put into effect. This evidence was received solely for the purpose of negating four things: 1. That the defendant had a motive for the commission of the crime charged in this case; 2. that the defendant had the intent which is a necessary element of the crime charged in this case; 3. that the defendant had the knowledge which is a necessary element of the crime charged in this case; 4. that there existed in the mind of the defendant a plan, scheme, system or design involving the crime charged in this case.

If you believe this evidence you may consider it, but only for the limited purpose for which it was received.

This instruction would have permitted the jury to consider specific acts as relevant to negate motive, intent, knowledge, and criminal plan. The specific acts referred to in the requested instruction were irrelevant for this purpose. We are of the opinion that allowing defendants to introduce specific acts of "good conduct" under the guise of negating motive, intent, knowledge or criminal plan would amount to an erosion of the established rule that good character may not be shown by specific acts. *State v. Handsome*, 300 N.C. 313, 266 S.E. 2d 670 (1980); *State v. Vaughn*, 296 N.C. 167, 250 S.E. 2d 210 (1978), *cert. denied*, 441 U.S. 935, 99 S.Ct. 2060, 60 L.Ed. 2d 665 (1979). We hold that the trial judge properly declined to give the requested instructions. We express no opinion as to whether this or a similar instruction would have been required had defendant requested the court to instruct the jury that these acts tended to negate *predisposition* to engage in criminal activity.

[12]   Defendant's fourteenth assignment of error is that the court's instructions to the jury on entrapment were erroneous. The court in part charged:

> . . . It must appear that Stephon Johnson used persuasion or trickery to cause the defendant (to attempt) to receive stolen goods, which he was not otherwise willing to do . . . .

Defendant argues that the instruction was erroneous because it should have included the phrase *that is, the defendant was not "predisposed" to commit the offense.* Even though the word "predisposed" was omitted, the jury was required to consider whether defendant was willing to attempt to receive stolen property. The instruction given adequately conveys the import of the defense of entrapment. It required the jury to consider whether the criminal intent originated with Stephon Johnson's trickery and deception, or with defendant himself. We do not see any significant difference between the trial court's use of the word "willing" rather than "predisposed." "Willing" is a synonym of the word "predisposed." Laird, WEBSTER'S NEW WORLD THESAURUS (Collins World, 1971) p. 468. Instructions in which the word "willing" was used have been approved in *United States v. Harrell,* 458 F. 2d 655 (5th Cir.), *cert. denied,* 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed. 2d 86 (1972), (if the defendant were ready and willing to commit the offense charged when the opportunity presented itself); *United States v. Braver,* 450 F. 2d 799 (2d Cir. 1971), *cert. denied,* 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed. 2d 794 (1972); (the second issue is whether the defendant was ready and willing to commit the crime without persuasion); *United States v. Berger,* 433 F. 2d 680 (2nd Cir. 1970), *cert. denied,* 401 U.S. 962, 91 S.Ct. 970, 28 L.Ed. 2d 246, *reh. denied, sub nom, Levy v. United States,* 402 U.S. 925, 91 S.Ct. 1367, 28 L.Ed. 2d 665 (1971). We hold that the instruction as given was adequate.

[13]   The more serious question presented in this assignment is whether it was error for the trial judge to fail to instruct that once defendant presented evidence of entrapment, the burden shifted to the State to prove beyond a reasonable doubt that defendant was predisposed to commit the crime with which he was charged. We disagree with defendant's contention that the question presented is one of constitutional magnitude. We interpret *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d

508 (1975), and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed. 2d 281 (1977), to permit states to impose the burden of raising and proving affirmative defenses on the defendant unless doing so requires the defendant to negate an essential element included in the definition of the offense with which he is charged. Predisposition is not an element included in the definition of attempted receipt of stolen property. Rather, it relates to defendant's propensity in general to attempt to receive stolen property. The State was required to prove that defendant received the property with a dishonest purpose, to wit, the intent to deprive the true owner of her property. While evidence of this intent may tend to show defendant's predisposition, such evidence does not make predisposition an element of the crime. We agree with the reasoning of the New York Court of Appeals in *People v. Laietta*, 30 N.Y. 2d 68, 281 N.E. 2d 157, *cert. denied*, 407 U.S. 923, 92 S.Ct. 2471, 32 L.Ed. 2d 809 (1972), that entrapment is not a defense which negates an essential element of crime but is a defense in the nature of confession and avoidance.

The rule in some federal courts is that once the defendant produces evidence that he has been induced to commit a crime, the burden shifts to the prosecution to show beyond a reasonable doubt that the defendant was predisposed to engage in the crime charged. *United States v. Berger, supra.* Others simply state the rule as being that once the defense of entrapment is raised, the government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped. *United States v. Gurule*, 522 F. 2d 20 (10th Cir. 1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed. 2d 800 (1976). *See* Annot., 28 A.L.R. Fed. 767 (1976). A substantial number of states also follow this view. *People v. Dennis*, 94 Ill. App. 3d 448, 418 N.E. 2d 479 (1981); *Henry v. State*, 269 Ind. 1, 379 N.E. 2d 132 (1978); *State v. Talbot*, 71 N.J. 160, 364 A. 2d 9 (1976); *State v. Jones*, 598 S.W. 2d 209 (Tenn. 1980); *State v. Hinkle*, 286 S.E. 2d 699 (W.Va. 1982). However, in this State, we have traditionally placed the burden of production and persuasion on defendants who seek to avail themselves of affirmative defenses. *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595 (1976); *State v. Clark*, 301 N.C. 176, 270 S.E. 2d 425 (1980), *insanity; State v. Cook*, 263 N.C. 730, 140 S.E. 2d 305 (1965); *State v. Wilkins*, 34 N.C. App. 392, 238 S.E. 2d 659, *disc. review denied*, 294 N.C. 187, 241 S.E. 2d 516 (1977); *State v. Braun*, 31 N.C. App. 101, 228 S.E.

2d 466, *disc. review denied, appeal dismissed,* 291 N.C. 449, 230 S.E. 2d 766 (1976), *entrapment.* We reaffirm our Court's holdings that the defendant has the burden to prove the defense of entrapment to the satisfaction of the jury. Once defendant presented evidence of entrapment, the burden did not shift to the prosecution to prove predisposition beyond a reasonable doubt.[2] The instructions given were proper. *Accord, Rhoades v. State,* 270 Ark. 962, 607 S.W. 2d 76 (1980), *cert. denied,* 452 U.S. 915, 101 S.Ct. 3048, 69 L.Ed. 2d 417 (1981); *People v. Dickerson,* 270 Cal. App. 2d 352, 75 Cal. Rptr. 828 (1969); *People v. Calvano,* 30 N.Y. 2d 199, 282 N.E. 2d 322 (1972); *Brown v. State,* 310 A. 2d 870 (Del. 1973).

Defendant's final argument is that the court erred in denying his motion to dismiss on the grounds of entrapment as a matter of law.

[14] The defense of entrapment is available when there are acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime and when the origin of the criminal intent lies with the law enforcement agencies. *State v. Walker,* 295 N.C. 510, 246 S.E. 2d 748 (1978); 21 Am. Jur. 2d *Crim. Law* § 202 (1981). We note that this is a two step test and a showing of trickery, fraud or deception by law enforcement officers alone will not support a claim of entrapment. The defendant must show that the trickery, fraud or deception was *"practiced upon one who entertained no prior criminal intent."* (Emphasis original.) *State· v. Stanley,* 288 N.C. 19, 28, 215 S.E. 2d 589, 595 (1975), (quoting *State v. Love,* 229 N.C. 99, 101, 47 S.E. 2d 712, 714 (1948)). Entrapment may occur through action of law enforcement officers *or their agents. State*

---

2. Some States have held that entrapment is an affirmative defense which must be proved by the defendant without specifically answering the question which has been presented to this Court. *See, Lisby v. State,* 82 Nev. 183, 414 P. 2d 592 (1966); *State v. Kamrud,* --- Mont. ---, 611 P. 2d 188 (1980); *State v. Little,* 121 N.H. 765, 435 A. 2d 517 (1981); *State v. Hsie,* 36 Ohio App. 2d 99, 303 N.E. 2d 89 (1973). Some States that have adopted the objective application of entrapment, which does not measure the predisposition of the defendant, have placed the burden of proof of the defense of entrapment on the defendant. *See, Batson v. State,* 568 P. 2d 973 (Alaska 1977); *State v. Anderson,* 58 Haw. 479, 572 P. 2d 159 (1977); *People v. D'Angelo,* 401 Mich. 167, 257 N.W. 2d 655 (1977); *Commonwealth v. Jones,* 242 Pa. Super. 303, 363 A. 2d 1281 (1976); *State v. Hoffman,* 291 N.W. 2d 430 (N.D. 1980).

*v. Walker, supra.* In this case, Johnson was clearly acting as an agent of the law enforcement officers.

The reason for recognizing the defense of entrapment is that it is improper and unfair for police agencies to instigate criminal intent in the minds of the innocent, inducing them to commit a crime for the purpose of instituting a criminal proceeding against them. *State v. Stanley, supra.*

A leading case in the development of the defense is *Butts v. United States*, 273 F. 35 (8th Cir. 1921), where the court held:

> The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it. Here the evidence strongly tends to prove, if it does not conclusively do so, that their first and chief endeavor was to cause, to create, crime in order to punish it, and it is unconscionable, contrary to public policy, and to the established law of the land to punish a man for the commission of an offense of the like of which he had never been guilty, either in thought or in deed, and evidently never would have been guilty of if the officers of the law had not inspired, incited, persuaded, and lured him to attempt to commit it.

273 F. at 38.

We have held that the defense of entrapment is available when the criminal intent originates with the law enforcement agencies and such intent is placed in the mind of the defendant by law enforcement officials so that he was tricked, induced or incited to commit a crime, which he would not have otherwise committed. *State v. Burnette*, 242 N.C. 164, 87 S.E. 2d 191 (1955); *State v. Stanley, supra.* We recognize that there are limits to the permissible bounds of police detection of crime and realize that without appropriate safeguards innocent citizens might become ensnared in the government's efforts to create crime to punish. It is equally true that undercover activities of law enforcement agencies are legitimate and are often the sole means of combating the spiraling crime rate.

It is well settled that the defense of entrapment is not available to a defendant who has a predisposition to commit the crime independent of governmental inducement and influence.

The fact that governmental officials merely afford opportunities or facilities for the commission of the offense is, standing alone, not enough to give rise to the defense of entrapment. *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

In *State v. Burnette, supra*, Justice Parker (later Chief Justice) wrote for this Court:

> It seems to be the general rule in those cases where the doing of a particular act is a crime regardless of the consent of anyone, that entrapment is not available as a defense to a person, who has the intent and design to commit a crime originating in his own mind, and who does in fact commit all the essential elements constituting it, merely because an officer of the law, or another, in his effort to secure evidence against him for a prosecution, affords him an opportunity to commit the criminal act, or purposely places facilities in his way or aids and encourages him in the perpetration of the crime which had its genesis in his own mind. (Citations omitted.)

242 N.C. at 170, 87 S.E. 2d at 195.

[15] Defendant asks this Court to hold that he was the victim of entrapment as a matter of law. Ordinarily, the issue of whether a defendant has been entrapped is a question of fact which must be resolved by the jury. *State v. Stanley, supra; State v. Campbell*, 110 N.H. 238, 265 A. 2d 11 (1970). It is only when the undisputed evidence discloses that an accused was induced to engage in criminal conduct that he was not predisposed to commit that we can hold as a matter of law that he was entrapped.

In *State v. Stanley, supra*, the defense of entrapment was not raised; however, we, acting under our supervisory powers, held that the defendant was entrapped as a matter of law. There the evidence was undisputed that a police undercover agent became a "big brother" figure to the defendant based upon false representations and repeatedly asked defendant to purchase drugs for him. When the defendant complied, he was charged by the agent with felonious possession of a controlled substance. The evidence clearly demonstrated that the criminal design originated with the undercover agent, and there was not a scintilla of evidence indicating that the teenaged defendant was predisposed to engage in possession or distribution of drugs.

Here, unlike *Stanley,* the police had reason to believe that defendant was engaged in receiving stolen property. Detective Holyfield testified that after his arrest, Stephon Johnson told him that he believed Bruce Hageman would purchase stolen property if offered the opportunity to do so. Johnson told Detective Holyfield that he had been in the Metal Mart on the day he and an accomplice stole property from Ms. Prince's home. Johnson also told Holyfield that he had been in the Metal Mart on prior occasions and sold property to Hageman. Holyfield testified that this was the reason why he chose the Metal Mart as the establishment to which Johnson was sent to try and sell stolen property. We believe that, based on Johnson's statements, the Winston-Salem police had reasonable grounds to suspect that defendant was receiving stolen property. *See Childs v. United States,* 267 F. 2d 619 (D.C. Cir. 1958), *cert. denied,* 359 U.S. 948, 79 S.Ct. 730, 3 L.Ed. 2d 680 (1959), holding that probable cause is not required before police can conduct undercover activities against a suspect. *See also United States v. Williams,* 487 F. 2d 210 (9th Cir. 1973), *cert. denied,* 416 U.S. 958, 94 S.Ct. 1973, 40 L.Ed. 2d 308 (1974); *People v. Wells,* 25 Ill. 2d 146, 182 N.E. 2d 689 (1962); *State v. Burrow,* 514 S.W. 2d 585 (Mo. 1974), which stand for the proposition that the police need not even have a reasonable suspicion before they set the stage to provide a defendant with the opportunity to commit a crime.

In order to determine whether defendant was entrapped as a matter of law, we must consider the particular elements of entrapment and apply the facts of this case to that law. We look first to the question of predisposition. The crucial element in deciding this case is whether defendant was predisposed to commit the crime.

Predisposition may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant an opportunity to commit the crime. *People v. Hall,* 25 Ill. 2d 297, 185 N.E. 2d 143 (1962); *People v. Gonzales,* 25 Ill. 2d 235, 184 N.E. 2d 833 (1962); *Story v. State,* 355 So. 2d 1213 (Fla. App.), *cert. denied,* 364 So. 2d 893 (Fla. 1978); *State v. Whitney,* 157 Conn. 133, 249 A. 2d 238 (1968); *State v. Talbot, supra; United States v. Becker,* 62 F. 2d 1007 (2d Cir. 1933); *Trice v. United States,* 211 F. 2d 513 (9th Cir.), *cert. denied,* 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707 (1954).

The facts in this case show that defendant purchased the jade ring after Johnson told him that he had been involved in stealing property and that he had lost the ring while attempting to "get away" but was able to go back and find it. Johnson told defendant that he did not want to sign his real name on the form which was provided to him when defendant bought the ring. After receiving this damaging information, defendant proceeded to purchase and resell the ring. Later, when Johnson returned with the silver, he told defendant that the silver was stolen and Hageman proceeded to buy it. Defendant then called on the police "hot line" and asked what had been reported as being stolen. He was furnished a list of items and was told that there was a report of stolen silver. Officer Reaves testified that he talked with defendant but did not tell him the pattern of the silverware which was reported as being stolen. He further testified that during their conversations he asked defendant if he had bought any silver flatware that day, and defendant replied in the negative.

Defendant, on the other hand, testified that he was afraid for his own safety and admitted that he did not mention this to the police officer or tell the officer that Johnson was going to return with more stolen property. The testimony and the recording offered into evidence shows that defendant bought the silver flatware, hesitating only briefly after indicating to Johnson that he was worried about the police. We note at this point that defendant's hesitancy might well have been the exercise of the natural caution that could be expected from one engaged in illegal conduct rather than conduct tending to negate predisposition. *People v. McSmith*, 23 Ill. 2d 87, 178 N.E. 2d 641 (1961). Assuming, *arguendo*, that there was fraud, trickery or deceit, the jury could reasonably infer from defendant's conduct that he was ready and willing to enter the illegal transaction when merely afforded the opportunity to do so.

The question of whether the evidence was sufficient to require an instruction on entrapment is not before us. The only question regarding entrapment is whether the actions of the police officers and their agent amounted to entrapment as a matter of law. There was a conflict in the evidence concerning predisposition and the facts were sufficient to permit but not require the jury to find that defendant was entrapped. The trial judge submitted the defense of entrapment to the jury and the

jury chose to find that defendant was not entrapped. We hold that the facts of this case do not compel a holding that defendant was entrapped as a matter of law.

The decision of the Court of Appeals is

Affirmed.